Dilliplaine, Appellant, *v.* Lehigh Valley Trust
Company.

Argued November 15, 1973. Before Jones, C. J.,
Eagen, O'Brien, Roberts, Pomeroy, Nix and Man-
derino, JJ.

*Edward N. Cahn,* for appellant.

*Richard F. Stevens,* with him *Thomas F. Traud, Jr.,* and *Butz, Hudders & Tallman,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 1, 1974:

On April 23, 1966, automobiles driven by Wayne F. Dilliplaine and James A. Burdette collided. Subsequently Burdette died of causes unrelated to the accident. Dilliplaine then brought this trespass action against the executor of Burdette's estate, Lehigh Valley Trust Company, for injuries suffered in the accident.

The jury found for defendant and Dilliplaine's motion for a new trial was denied. The Superior Court affirmed.[1] We granted the petition for allowance of appeal.[2] The sole issue is whether the trial court erred by instructing the jury that the deceased was presumed to have exercised due care at the time the accident occurred.

Appellant Dilliplaine frankly concedes that he neither offered a point for charge nor took specific exception to the due care instruction actually given.[3] In his motion for a new trial and again on appeal, he argued that in giving the presumption of due care instruction the trial judge committed basic and fundamental error.

---

[1] *Dilliplaine v. Lehigh Valley Trust Co.,* 223 Pa. Superior Ct. 245, 297 A.2d 826 (1972) (per curiam). Judge HOFFMAN filed a concurring opinion in which Judges SPAULDING and CERCONE joined. Id. at 246, 297 A.2d at 826. Judge PACKEL filed a separate concurring opinion. Id. at 249, 297 A.2d at 828.

[2] See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp. 1973).

[3] A general exception to the entire charge to the jury was taken. Appellant did specifically except to four instructions none of which are involved in this appeal.

Appellant espouses the theory that an appellate court must consider trial errors claimed to be basic and fundamental despite the absence of any objection or specific exception at trial. *Millili v. Alan Wood Steel Co.*, 418 Pa. 154, 156-57, 209 A.2d 817, 818 (1965); *Patterson v. Pittsburgh Rys.*, 322 Pa. 125, 128, 185 A. 283, 284 (1936). This theory has been applied primarily to asserted infirmities in a trial court's instructions to the jury.

We believe that two practical problems with basic and fundamental error make it an unworkable appellate procedure. Initially, appellate court recognition of alleged errors not called to the trial court's attention has a deleterious effect on the trial and appellate process. Also, despite its repeated articulation, the theory has never developed into a principled test, but has remained essentially a vehicle for reversal when the predilections of a majority of an appellate court are offended.

Appellate court consideration of issues not raised in the trial court results in the trial becoming merely a dress rehearsal. This process removes the professional necessity for trial counsel to be prepared to litigate the case fully at trial and to create a record adequate for appellate review. The ill-prepared advocate's hope is that an appellate court will come to his aid after the fact and afford him relief despite his failure at trial to object to an alleged error. The diligent and prepared trial lawyer—and his client—are penalized when an entire case is retried because an appellate court reverses on the basis of an error opposing counsel failed to call to the trial court's attention. Failure to interpose a timely objection at trial denies the trial court the chance to hear argument on the issue and an opportunity to correct error. It also tends to postpone unnecessarily disposition of other cases not yet tried for the first time. See Pa. R. C. P. 214(d).

The notion of basic and fundamental error not only erodes the finality of trial court holdings, but also encourages unnecessary appeals and thereby further burdens the decisional capacity of our appellate courts.[4] Trial counsel, though he may not have claimed error at trial, is inspired after trial and an adverse verdict by the thought that an appellate court may seize upon a previously unclaimed error and afford relief on a ground not called to the trial court's attention.

Perhaps at an earlier stage of our jurisprudential development this practice could be justified. Today, however, there is no excuse for and appellate courts should not encourage less than alert professional representation at trial. Virtually all active practitioners at our bar have had a formal legal education at a law school accredited by the American Bar Association.[5] The Pennsylvania Bar Institute,[6] Pennsylvania Trial Lawyers Association, and local bar associations as well as the American Bar Association and the American Law Institute provide programs of continuing legal education for members of the bar.[7]

Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the order-

---

[4] See Pa. R. C. P. 227(b).

[5] See Pa. Sup. Ct. R. 8, Subd. C(2) ; See Spiegelberg, Forward to A. Levin & H. Cramer Trial Advocacy, Problems and Materials at xiii (1968).

"A hundred years ago over eighty-five per cent of the lawyers in this country became lawyers by reading law in an office. Today the figure is less than ten per cent and in some of the more populous states practically negligible."

[6] The Institute is the continuing legal education arm of the Pennsylvania Bar Association.

[7] See, e.g., Joint Committee on Continuing Legal Education of the ALI and the ABA, in American Law Institute, 1973 Annual Report.

ly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal.[8] Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.[9]

The other major weakness of the basic and fundamental error theory is its ad hoc nature. The theory has been formulated in terms of what a particular majority of an appellate court considers basic or fundamental.[10] Such a test is unworkable when neither the test itself nor the case law applying it develop a predictable, neutrally-applied standard.

---

[8] When only properly preserved issues are considered on appeal, a full transcript of the trial will often be unnecessary. The trial court on post-trial motions (and the appellate court) will require transcripts of only those portions of the trial which are in issue. Reduction of the number of complete transcripts required for appeal will minimize both the expense and delay which now make an appeal so costly.

[9] See ABA Code of Professional Responsibility, DR 6-101(A)(2) (1971).

"(A) A lawyer shall not: . . . (2) Handle a legal matter without preparation adequate in the circumstances."

[10] See *Leech v. Jones*, 421 Pa. 1, 218 A.2d 722 (1966); *Millili v. Alan Wood Steel Co.*, 418 Pa. 154, 209 A.2d 817 (1965); *Enfield v. Stout*, 400 Pa. 6, 161 A.2d 22 (1960); *Patterson v. Pittsburgh Rys.*, 322 Pa. 125, 185 A. 283 (1936).

We conclude that basic and fundamental error has no place in our modern system of jurisprudence. This doctrine, which may in the past have been acceptable, has become an impediment to the efficient administration of our judicial system. Basic and fundamental error will therefore no longer be recognized as a ground for consideration on appeal of allegedly erroneous jury instructions; a specific exception must be taken.

Because appellant failed to specifically object to the trial court's instruction on presumption of due care, we will not consider this allegation of error. The order of the Superior Court is affirmed.

Mr. Justice MANDERINO joins the opinion of the Court.

Mr. Justice O'BRIEN concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE MANDERINO:

I join in the majority opinion by Mr. Justice ROBERTS holding that the rule of basic and fundamental error is a rule without specific standards and should be abolished. The abolition of the rule, I should like to add, does not leave an aggrieved party without a remedy.

Issues not raised in the trial court because of ineffective assistance of counsel may be reviewable on appeal in a criminal case. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), sets forth specific standards which are applicable in determining whether counsel was effective in a criminal case.

An aggrieved party in a civil case, involving only private litigants unlike a defendant in a criminal case, does not have a constitutional right to the effective assistance of counsel. The remedy in a civil case, in which chosen counsel is negligent, is an action for malpractice.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE POMEROY:

While I concur in the result reached by the majority in the case before us, I cannot agree that the time has come to discard the doctrine of basic and fundamental error as it applies to erroneous jury instructions. However limited its scope and rare the occasions for its application, I believe the doctrine has a useful role to play in protecting the constitutional rights of litigants in our courts.

The doctrine of basic and fundamental error has been long established in this and other jurisdictions.[1] The doctrine is not confined to errors in jury instructions but can embrace any trial error which deprives a litigant of his fundamental right to a fair and impartial trial. This right is an integral part of due process of law, guaranteed to all litigants by the Fifth and Fourteenth Amendments. Obviously it is only an unusual trial error that will amount to a denial of due process, and in my view, the doctrine should be available to remedy only those trial errors so contrary to fundamental fairness as to reach the dimensions of a constitutional violation. *See Adoption of R.I.*, 455 Pa. 29, 34, 312 A.2d 601, 604 (1973) (concurring opinion of this writer); *Commonwealth v. Thompson*, 444 Pa. 312, 317, 281 A.2d 856, 858 (1971) (concurring opinion of this writer, joined by Mr. Justice EAGEN and Mr.

---

[1] Although Federal Rule of Civil Procedure 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection", the federal courts recognize the doctrine of basic and fundamental error as an exception to the rule's requirements. *See King v. Laborers Local 818*, 443 F.2d 273 (6th Cir. 1971); *Arteiro v. Coca Cola Bottling, Midwest, Inc.*, 47 F.R.D. 186, 188 (D. Minn. 1969) and cases cited.

As to other jurisdictions which recognize the doctrine, *see generally* 5 Am. Jur. 2d, Appeal and Error, §549.

Justice BARBIERI) ; *Commonwealth v. Jennings,* 442 Pa. 18, 274 A.2d 767 (1971) ; *Commonwealth v. Williams,* 432 Pa. 557, 563-564, 248 A.2d 301 (1968) ; *see also Commonwealth v. Hallowell,* 444 Pa. 221, 226-227, 282 A.2d 327 (1971).

I am not persuaded that the doctrine of basic and fundamental error encourages careless or cynical disregard of orderly trial procedure by trial lawyers. The very uncertainty, indeed the unlikelihood, of the doctrine's application argues against any such consequence. Attorneys have everything to gain and nothing to lose from timely objection to errors at trial. We have applied the doctrine so sparingly that surely it is a rare lawyer indeed who would risk a charge of malpractice or incompetence on the speculation that an appellate court will find a particular error to be basic and fundamental.

The majority suggests that, whatever justification may once have existed for the fundamental error concept, it may now be safely discarded in view of the high quality of formal education which most trial attorneys receive today, and the various opportunities for continuing legal education. This complacency is not shared by other observers of the workings of our legal system. As Chief Justice Warren E. BURGER has remarked but recently: "Many judges in general jurisdiction trial courts have stated to me that fewer than 25 percent of the lawyers appearing before them are genuinely qualified; other judges go as high as 75 percent. I draw this from conversations extending over the past twelve to fifteen years at judicial meetings and seminars, with literally hundreds of judges and experienced lawyers. It would be safer to pick a middle ground and accept as a working hypothesis that from one-third to one-half of the lawyers who appear in the serious cases are not really qualified to render fully adequate representation." W. E. Burger, The Special

Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice? 42 Ford. L. Rev. 227, 234 (1973) (footnotes omitted). While in Pennsylvania we have what I consider a generally high degree of competence in the trial bar, the fact remains that there has been in recent decades, here as elsewhere, phenomenal change in both substantive and procedural law, accompanied by a tremendous increase in the volume of litigation.[2] As Chief Justice BURGER suggests, there is evidence that, at the same time, the quality of trial advocacy in our nation's courts has been declining. We must strive to reverse this trend, to be sure, but I do not think we should do so at the expense of litigants who are not to blame for their attorneys' shortcomings. There are other, more direct and less costly ways of raising standards of trial advocacy than discarding the doctrine of basic and fundamental error.

Nor do I believe that the fundamental error doctrine adds significantly to admittedly overcrowded appellate dockets. It is the nature of humankind to be ever hopeful in the face of the most discouraging odds, and I fear that as long as there are appellate courts there will be litigants pursuing frivolous appeals. This is particularly true in the area of criminal law, where most defendants receive legal representation at no personal cost, and where all state remedies must be exhausted to pave the way for possible relief in the federal courts. A truly egregious criminal trial error which we decline to consider on appeal because not preserved below is almost certain to resurface in a post-conviction proceeding in the form of a charge of ineffectiveness of counsel. Considerations of judicial economy argue in favor of dealing with errors of this sort

---

[2] *See generally* The Courts, the Public, and the Law Explosion (H. W. Jones, ed. 1965).

on direct appeal from the judgment of sentence. *See, e.g., Commonwealth v. Hallowell, supra.*

Finally, it bears emphasizing that the rule now being discarded has existed not for the benefit of lazy and incompetent lawyers, but for the protection of litigants who may have been denied the essential elements of a fair and impartial trial. The considerations of judicial convenience and efficiency cited by the majority, important as they are, should give way in the rare situation where basic rights of this sort are in the balance. *Cf. Niederman v. Brodsky,* 436 Pa. 401, 412, 261 A.2d 84 (1970). I believe that, in repudiating the doctrine as it applies to erroneous jury instructions, the majority has taken a step which is both unnecessary and unwise.

Mr. Justice EAGEN joins in this concurring and dissenting opinion.