## Commonwealth v. Mackaliunas

Before Robinson, P.J., Conaboy, Kosik and Walsh, JJ.

*Brigid E. Carey*, for Commonwealth.

*Eugene F. Smith*, for defendant.

WALSH, J., December 24, 1974.—This matter is before the court on defendant's motion for a new trial based on the following reasons: (1) the verdict was against the evidence; (2) the verdict was against the weight of the evidence; (3) the verdict was against the law; (4) the verdict was against the charge of the court.

## FACTS

Defendants, Adolph and Hannah Mackaliunas, were married in 1941. On April 2, 1959, Hannah Mackaliunas purchased a property located at 442 Mary Street in the City of Scranton. The property was paid for from money she earned and money she received from her mother. Adolph Mackaliunas did not work since 1941. They have three children, two of whom have finished college. Hannah supported the entire household. When the property was purchased, it was put in both Hannah and Adolph's names as tenants by the entireties. The property was, at the date of trial, still held in both names as tenants by the entireties. On March 31, 1970, Adolph left the household of Hannah Mackaliunas and on April 7, 1970 applied for public assistance. From April, 1970 until March 16, 1971, he received assistance payments totaling $1,441.10. The parties are still separated, but married. In April 1971, the Commonwealth sued Adolph and Hannah Mackaliunas, his wife, for the amount of public assistance paid. An answer was filed on behalf of Hannah only and a default judgment was entered against Adolph for failure to answer. The only defense

offered by Hannah was that Adolph had deserted her in 1970. Her testimony was that he left in early April 1970 before he applied for assistance and stated that, "only fools, and mules work," and that he was applying for public assistance. They have been separated since, and there have been no offers of reconciliation.

The suit is based on section 4 of the Act of June 24, 1937, P.L. 2045, 62 PS §1974, which states as follows:

"(a) Except as limited by subsection (c) hereof, the real and personal property of any person shall be liable for the expenses of his support, maintenance, assistance and burial, and for the expenses of the support, maintenance, assistance and burial of the spouse and unemancipated minor children of such property owner, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or public agency may sue the owner of such property for moneys so expended, and any judgment obtained shall be a lien upon the said real estate of such person and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the person, surviving spouse, or dependent children.

"(b) Except as limited by subsection (c) hereof, any claim for the expenses of support, maintenance, assistance and burial of a person and for the support, maintenance, assistance and burial of his spouse and unemancipated minor children, held by any public body or public agency, shall have the same force and effect against the real and personal estate of a de-

ceased person as other debts of a decedent, and shall be ascertained and recovered in the same manner.

"(c) No lien may be imposed against the property of any individual or of his spouse on account of medical assistance for the aged paid or to be paid on his behalf (except pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual), and there shall be no adjustment or recovery from such individual's estate or from the estate of his spouse of any medical assistance for the aged correctly paid on behalf of such individual."

The Commonwealth produced evidence, which, if believed by the jury, could sustain their verdict under the above-quoted statute. We, therefore, dismiss defendant's first three reasons for a new trial.

Hannah Mackaliunas fits squarely within this section of the law. She is a joint owner of the property with her husband, who was the welfare recipient. Adolph Mackaliunas was, during the period the State incurred the expense, her husband, and still is her husband, although they are living separated and apart. In fact, all these facts were undisputed.

The only dispute in this case was whether Adolph had, in fact, deserted Hannah and, also whether this is a defense in this type of action.

The trial judge, at the request of defendant, charged the jury that desertion would be a defense if they so found. The pertinent portion of the charge was as follows:

"Now, in this case, Hannah says that Adolph actually deserted her. She said that he left their home with no valid reason. So, if you found that there was a desertion in this case, and that the desertion took place prior to him going on assistance, then she would not be responsible for this amount of money and you would find for the defendant.

"Now, desertion is the actual abandonment of the

matrimonial cohabitation with the intent to desert willfully, maliciously persisted in without cause for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other.

"So, if you find that Adolph deserted Hannah prior to going on assistance, then you can find for the Defendant and there would be no obligation.

"However, if you find they were husband and wife at the time this assistance was rendered and that there was no valid grounds for divorce, in other words Hannah would have no valid grounds for divorce, then you would find for the Plaintiff."

At the end of the charge, the court asked counsel, "are there any additions or corrections or any other points for charge?" The Commonwealth objected to the charge on desertion maintaining it was not a defense. However, defendant, who asked for the charge and who is now complaining that it may have been misunderstood by the jury, stated, "Your Honor's charge is eminently fair."

Defendant now argues that the jury may have misunderstood the charge and probably assumed that in order to find for defendant it would be necessary to find that Adolph had abandoned Hannah two years before he started getting assistance.

It is, of course, possible that the jury did misunderstand the instruction. However, it is also possible that they simply did not believe that a valid desertion had taken place.

Pa. R.C.P. 227(b) states: "all exceptions to the charge to the jury shall be taken before the jury retires": Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A. 2d 114 (1974), also held that specific exceptions must be taken to allege erroneous jury instructions.

In the instant case, there was no specific exception

to the charge by the complaining defendant. There were also not general exceptions taken: Dilliplaine v. Lehigh Valley Trust Co., 322 A. 2d 114, states:

"Requiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error."

The motion for a new trial is, therefore, denied.

Now, December 24, 1974, defendant's motion for a new trial is denied.