609 A.2d 612

**KEYSTONE HEALTH PLAN WEST, Petitioner,**

v.

**DEPARTMENT OF HEALTH, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 1992.

Decided May 7, 1992.

Gerri L. Sperling, for petitioner.

Darius G.C. Moss, Asst. Counsel, for respondent.

Barbara Blackmond, for intervenors.

Before COLINS and SMITH, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Keystone Health Plan West (Keystone) petitions for review of the order of the Secretary of the Department of Health (Department) which determined that Keystone is not in compliance with requirements of Sections 3, 4, 5.1, and 8 of the Health Maintenance Organization Act (HMO Act)[1] and required Keystone to submit to the Department for review and approval contracts for basic health services,[2] including hospital services. The Department's action was initiated by a complaint filed by The Medical Center of Beaver County (Medical Center) and Riverside Health Plan (Riverside).

Issues raised by Keystone for review are whether the Department has authority to review what Keystone asserts is a private contractual dispute; whether Keystone's agreement with Blue Cross of Western Pennsylvania (Blue Cross) is subject to the Department's jurisdiction under 40 P.S. § 1558(a); whether the Department's conclusions are supported by substantial evidence; and whether the Department's order is barred by the doctrine of laches.

## I

The Medical Center is a duly licensed acute care hospital. Riverside is a health maintenance organization (HMO) and is a wholly-owned subsidiary of a joint venture between the Medical Center and physicians who are part of its staff. Keystone is an HMO and is jointly owned by Blue Cross and Pennsylvania Blue Shield. Blue Cross and the Medical Center entered into a hospital reimbursement agreement effective July 1984. Blue Cross also entered into an agreement with Keystone in July 1986 whereby Blue Cross agreed to provide hospitalization and related health care

1. Act of December 29, 1972, P.L. 1701, *as amended,* 40 P.S. §§ 1553, 1554, 1555.1, and 1558. Section 5.1 of the HMO Act was added by Section 3 of the Act of December 19, 1980, P.L. 1300.

2. "Basic health services" is defined in the HMO Act as "those health services, including as a minimum, but not limited to, emergency care, inpatient hospital and physician care, ambulatory physician care, and outpatient and preventive medical services." 40 P.S. § 1553.

benefits to Keystone's members. Under this agreement, Keystone's members are considered to be Blue Cross subscribers for purposes of Blue Cross' participating hospital agreements, including its reimbursement agreement with the Medical Center.

In August 1986, the Medical Center became aware of marketing materials put out by Keystone which listed the Medical Center as a participating hospital in Keystone's health plan. The Medical Center demanded that Blue Cross cause the removal of the Medical Center's name from all Keystone marketing materials and that a retraction be sent to all subscribers. Blue Cross asserted that the Medical Center was obligated under the agreement to accept for treatment all Keystone members and to charge the same fees that the Medical Center charges regular Blue Cross subscribers.[3] Dispute resolution proceedings conducted pursuant to the agreement resulted in a ruling in favor of Blue Cross that Keystone members are Blue Cross subscribers and should be served as such by the Medical Center.

Nevertheless, the Medical Center and Riverside questioned whether the arrangement that Keystone had with Blue Cross for in-patient hospital services was one that was approved by the Department of Health pursuant to the HMO Act. Consequently, in January 1988, the Medical Center and Riverside filed their complaint with the Department. Specifically, the Medical Center and Riverside's position was that the contract between Blue Cross and Keystone is a contract provided for in 40 P.S. § 1558(a)[4] and as

3. In October 1986, the Medical Center contacted the Insurance Department and questioned the legal authority for Blue Cross' position. After hearing both sides' positions, the Insurance Department in January 1987 informed the Medical Center that the matter involved a contractual dispute between the parties and that the Insurance Department therefore had no grounds to intervene.

4. § 1558. Contracts with practitioners, hospitals, insurance companies, etc.

(a) Contracts enabling the corporation to provide the services authorized under section 4 of this act [40 P.S. § 1554] made with hospitals and practitioners of medical, dental and related services

such is subject to review by the Department. The complaint alleges violations of the HMO Act subject to the Department's review.

The Department determined that the nature of the complaint placed Blue Cross outside the Department's jurisdiction because, under the Hospital Plan Corporations Act, 40 Pa.C.S. §§ 6101–6127, Blue Cross is subject to the jurisdiction of the Insurance Department. The complaint against Blue Cross was thus dismissed. However, the Department determined that Keystone, as an HMO approved by the Department under the HMO Act, was a proper party to a complaint before the Department.

After exhibits, depositions, and stipulations of fact were submitted to the Department in lieu of a formal hearing, the Secretary on November 20, 1990 issued his determination and order, concluding that the HMO Act requires that an HMO must provide to its subscribers specified basic health services and that all contracts for such services are subject to review by the Department. The Secretary determined that Keystone's contract with Blue Cross does not meet the requirements of the HMO Act specified in 40 P.S. §§ 1554, 1555.1,[5] and 1558, and ordered that compliance

shall be filed with the secretary. The secretary shall have power to require immediate renegotiation of such contracts whenever he determines that they provide for excessive payments, or that they fail to include reasonable incentives for cost control, or that they otherwise substantially and unreasonably contribute to escalation of the costs of providing health care services to subscribers, or that they are otherwise inconsistent with the purposes of this act.

5. § 1554. **Services which shall be provided**
 (a) Any law to the contrary notwithstanding, any corporation may establish, maintain and operate a health maintenance organization upon receipt of a certificate of authority to do so in accordance with this act.
 (b) Such health maintenance organizations shall:
 (1) Provide either directly or through arrangements with others, basic health services to individuals enrolled;
 (2) Provide either directly or through arrangements with other persons, corporations, institutions, associations or entities, basic health services; and
 (3) Provide physicians' services (i) directly through physicians who are employes of such organization, (ii) under arrangements

may be effected through direct contracts with hospitals meeting statutory standards or amendments to the Blue Cross hospital reimbursement agreement addressing member hospitals' obligations to Keystone, its subscribers, and to the Department. Keystone's application for reconsideration was denied, and on January 18, 1991, the Secretary granted Keystone's request for stay of the order pending disposition of the petition for review to this Court.

> with one or more groups of physicians (organized on a group practice or individual practice basis) under which each such group is reimbursed for its services primarily on the basis of an aggregate fixed sum or on a per capita basis, regardless of whether the individual physician members of any such group are paid on a fee-for-service or other basis or (iii) under similar arrangements which are found by the secretary to provide adequate financial incentives for the provision of quality and cost-effective care.
>
> § 1555.1. Certificate of authority
> (a) Every application for a certificate of authority under this act shall be made to the commissioner and secretary in writing and shall be in such form and contain such information as the regulations of the Departments of Insurance and Health may require.
> (b) A certificate of authority shall be jointly issued by order of the commissioner and secretary when
> (1) The secretary has found and determined that the applicant:
> (i) Has demonstrated the potential ability to assure both availability and accessibility of adequate personnel and facilities in a manner enhancing availability, accessibility and continuity of services;
> (ii) Has arrangements for an ongoing quality of health care assurance program; and
> (iii) Has appropriate mechanisms whereby the health maintenance organization will effectively provide or arrange for the provision of basic health care services on a prepaid basis; and
> (2) The commissioner has found and determined that the applicant has a reasonable plan to operate the health maintenance organization in a financially sound manner and is reasonably expected to meet its obligations to enrollees and prospective enrollees. In making this determination, the commissioner may consider:
> (i) The adequacy of working capital and funding sources.
> (ii) Arrangements for insuring the payment of the cost of health care services or the provision for automatic applicability of an alternative coverage in the event of discontinuance of the health maintenance organization.
> (iii) Any agreement with providers of health care services whereby they assume financial risk for the provision of services to subscribers.
> (iv) Any deposit of cash, or guaranty or maintenance or minimum restricted reserves which the commissioner, by regulation, may adopt to assure that the obligations to subscribers will be performed.

II

This Court's scope of review of an adjudication by the Department is limited to a determination of whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Department of Health v. Rehab Hospital Services Corp.*, 127 Pa.Commonwealth Ct. 185, 561 A.2d 342 (1989), *appeal denied*, 525 Pa. 607, 575 A.2d 571 (1990). In reviewing the discretionary acts of an agency, a reviewing court may interfere only when there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's functions or duties. *Slawek v. State Board of Medical Education & Licensure*, 526 Pa. 316, 586 A.2d 362 (1991). Moreover, the construction given a statute by those charged with its execution and application is entitled to great weight and should not be disregarded unless it is clear that the agency's interpretation is incorrect. *Murphy v. Township of Abington*, 88 Pa.Commonwealth Ct. 491, 490 A.2d 483 (1985).

■ Keystone first argues that the matter is simply a private contractual dispute over which the Department lacks authority and that the Medical Center and Riverside's allegations of violations of the HMO Act are irrelevant to this dispute, relying on the Insurance Department's refusal to intervene in the matter. The Secretary noted in his opinion that the role of the Insurance Commissioner (Commissioner) is spelled out in 40 P.S. § 1555.1(b)(2) as being that of a reviewer of the financial soundness of the organization. Hence, the Commissioner may analyze and render an opinion on the Medical Center's complaint only in that respect. However, this does not preclude review by the Department of whether Keystone effectively provides or arranges for basic health care services. Indeed, 40 P.S. § 1555.1 clearly provides for joint issuance of HMO certificates of authority by the Commissioner and the Secretary based upon these separate analyses.

The complaint filed with the Department indicates that the matter concerned interpretation of the HMO Act by the Department. As such, the allegations raised in the complaint are not irrelevant to the Department's function of oversight of an HMO's provision of basic health care services. The complaint met the requirements of 1 Pa.Code § 35.9, which permits the filing of a complaint with an agency against a person subject to the agency's jurisdiction and alleged to have violated a statute or regulation administered or issued by the agency. Thus, the issues raised were properly before the Department notwithstanding the Insurance Department's prior refusal to intervene.[6]

█ Keystone next contends that its agreement with Blue Cross is not subject to the Department's jurisdiction under 40 P.S. § 1558(a) but rather is subject to the Insurance Department's jurisdiction under 40 P.S. § 1558(b).[7] The Secretary's opinion noted that 40 P.S. § 1558(a) was amended to place with the Secretary the responsibility of reviewing contracts which would enable the HMO to provide the services authorized in 40 P.S. § 1554. Further-

6. Keystone cites *Pennsylvania Blue Shield v. Department of Health,* 93 Pa.Commonwealth Ct. 1, 500 A.2d 1244 (1985), *appeal denied,* 514 Pa. 632, 522 A.2d 560 (1987), to support its position that the Department lacks jurisdiction over a private contractual dispute. However, a full reading of *Pennsylvania Blue Shield* does not support this contention. Although the Court held that the Department has no authority to issue money judgments in favor of health providers and against Blue Shield, the Department has the power to order Blue Shield to improve its professional health services by requiring Blue Shield to revise its contract provisions with its participating doctors so as to effectuate the policy of providing affordable health care to the Commonwealth's citizens.

7. 40 P.S. § 1558(b) provides:
 A health maintenance organization may reasonably contract with any individual, partnership, association, corporation or organization for the performance on its behalf of other necessary functions including, but not limited to, marketing, enrollment, and administration, and may contract with an insurance company authorized to do an accident and health business in this State or a hospital plan corporation or a professional health service corporation for the provision of insurance or indemnity or reimbursement against the cost of health care services provided by the health maintenance organization as it deems to be necessary. Such contracts shall be filed with the commissioner.

more, Section 10(e) of the HMO Act, 40 P.S. § 1560(e), recognizes the division of responsibility established in 40 P.S. § 1555.1; that is, the Commissioner's role as to financial matters, and the Secretary's role as to the actual delivery system. Upon examination of the legislative history, the Secretary determined that the General Assembly intended to recognize the uniqueness of HMO's and provide for their proper regulation by those agencies of government with expertise relevant to the subject area. Hence, these oversight responsibilities can only be fulfilled by the Secretary's review of all contracts and arrangements relevant to the required services of an HMO. Accordingly, the Secretary properly determined that 40 P.S. § 1558(a) must be read to require all contracts for basic health services to be submitted for review to the Department.

Keystone maintains that this result is contrary to the express language of 40 P.S. § 1558(a) that requires only those contracts which are made with hospitals and practitioners need be filed with the Secretary. Thus, according to Keystone, the wording of 40 P.S. § 1558(a) contemplates that an HMO may enter into contracts for the provision of services authorized by 40 P.S. § 1554 with entities other than hospitals and practitioners, and those contracts are not subject to the Secretary's supervision, as is the case with the contract between Keystone and Blue Cross.

Keystone's position is untenable because, as the Secretary determined, if 40 P.S. § 1558(a) were read to mean only those contracts with hospitals and practitioners, a large number of arrangements contemplated by 40 P.S. § 1554(b)(3) would be excluded from review by both the Secretary and the Commissioner, a result surely not intended by the legislature. Furthermore, the Secretary stated that the Department's major principle is to consistently ensure that an HMO has adequate authority to perform its quality assurance role. Although the contract in question contains certain provisions which fall within the administrative and reimbursement aspects of 40 P.S. § 1558(b), the Secretary properly concluded that the agreement as a whole

is one contemplated by 40 P.S. § 1558(a). Moreover, the Secretary was careful to point out the following:

> I am not ruling that Keystone cannot continue to utilize a contract with Blue Cross to provide hospital services to Keystone members. Keystone, as well as any HMO, must also comply with the Department's standards regarding acceptable hospital contracts. It can meet this requirement either by entering into contracts containing the Department's standards directly with hospitals, or by negotiating with Blue Cross to amend the standard Blue Cross Hospital Reimbursement Agreement to include these standards for the protection of Keystone members. In any event, the provider of the service must be held accountable to the HMO, and must acknowledge and agree to this quality assurance monitoring by the HMO and the Department.

Secretary's Opinion, p. 47.

 Keystone also argues that the Secretary's conclusions that Keystone lacks quality assurance and utilization programs and grievance procedures are not supported by substantial evidence. Keystone asserts that the Department never provided notice to Keystone that the Medical Center and Riverside's complaint had become an agency enforcement proceeding, and therefore never produced evidence regarding the specified programs and procedures. Keystone maintains that in order to proceed, the Department should have initiated such a proceeding under 1 Pa. Code § 35.14, which provides that an agency commencing an action must issue an order to show cause setting forth grounds for the action. Keystone's argument fails in at least two respects. First, 1 Pa.Code § 35.14 is inapplicable because the Department did not commence the action; the proceedings were initiated by the Medical Center and Riverside's complaint. Second, the nature of the complaint provided more than adequate notice for Keystone to gauge its response before the Department. Above all, the focus of the proceeding and the resulting order was on the contract between Keystone and Blue Cross, and the Secretary clear-

ly held that the contract did not meet requirements specified in the HMO Act.

■ Finally, Keystone argues that the Department's determination is barred by the equitable doctrine of laches. Keystone claims that it established its existing provider network through reliance on the Department's earlier certificate of authority approval of Keystone's arrangement with Blue Cross. This position, however, was never raised before the Department. It is a fundamental principle that where an issue is cognizable in a given proceeding, as here, and is not raised, it is waived and will not be considered on a review of that proceeding. *Commonwealth v. Romberger*, 474 Pa. 190, 378 A.2d 283 (1977); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). The rationale underlying the waiver doctrine in *Dilliplaine* and *Romberger* has been specifically applied to administrative proceedings. *DeMarco v. Jones & Laughlin Steel Corp.*, 513 Pa. 526, 522 A.2d 26 (1987). Accordingly, Keystone's laches argument will not be addressed.

The Secretary's order is affirmed.

## ORDER

AND NOW, this 7th day of May, 1992, the order of the Secretary of the Department of Health dated November 20, 1990 is affirmed.