## Allied Electrical Supply Co. v. Roberts

C.P. of Greene County, A.D. no. 182, 2000.

*Stephen Backer,* for plaintiff.
*Paul Walsh,* for defendant.

NALITZ, *J.,* August 16, 2001—Plaintiff has requested post-trial relief from the verdict of the jury. It raises two issues, but because of our disposition of the first we need not consider the second. Plaintiff argues that it was error not to declare a mistrial when the issue of insurance was injected into the trial. For the reasons set forth below, we agree. Plaintiff is Allied Electrical Supply Company, hereinafter known as Allied, and the defendant is Craig T. Roberts, i/a/t/a Greene County Pottery Works, hereinafter known as Roberts. Allied and Roberts each rented approximately one-half of a commercial building on East High Street in Waynesburg, Pennsylvania. On March 18, 1998, after Allied's normal business hours, but while Roberts was still in his shop, a fire broke out in the building. The fire trapped Roberts in the rear of his store in a room with an outside door which was locked. Fortunately, passersby noticed the smoke and heard Roberts' calls for help, and were able to break open the door and extricate him. The building was a total loss. Allied, or its subrogee insurer, brought suit against Roberts for loss of inventory and for the loss caused by the interruption of its business. The parties stipulated as to damages and the matter came to be heard by a jury on the issue of liability only.

On the morning of the second day of this two-day trial, counsel for Roberts called one Fred Simpson. Mr. Simpson occupied a unique position. He was apparently the last customer to call at the Pottery Works that day, at about 4:30 p.m., and was also one of the firefighters who responded to the emergency call at about 6 p.m. He was

on the first engine to arrive at the scene and was the second man on the first hose to enter the building. After Simpson described his observations during both of his visits, and his actions at the fire scene, the following exchange occurred.

"Q. [Mr. Walsh, Roberts' counsel]: Did you ever talk to Attorney Barker [Allied's trial counsel] about this case?

"A. Yes, Mr. Barker telephoned me and I spoke to him on the phone. And when I spoke to him on the phone I don't remember the day, and I don't recall if he identified himself as the attorney for the insurance company for Allied Electric." (NT 315-16.)

During the recess which followed Mr. Simpson's testimony, both counsel approached the bench. The colloquy was not recorded, but it seems that the conversation included Roberts' counsel's remarks that the question about Mr. Simpson's contact with Allied's counsel was designed to suggest to the jury that Allied had failed to call a witness with information that would be valuable to the jury's understanding of the events of March 18, 1998. In our recollection, plaintiff's counsel did not specifically request a mistrial at this point. Instead, we discussed a curative instruction. Following the recess, the jury heard the testimony of Richard Brugger, Robert's expert. Mr. Brugger was the last witness called. The attorneys delivered their closing arguments, the jury was instructed (including a charge that the fact of insurance was irrelevant to the issues before them) (NT 393) and then excused to begin its deliberations. Only after the jury was excused did Allied move for a mistrial. Roberts argues that this sequence constitutes a waiver by Allied of the prejudicial effect of the mention of insurance, citing *Dilliplaine*

*v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974), requiring a *timely* objection by trial counsel to errors that occur in the course of a trial. We do not read *Dilliplaine* quite so narrowly. The alleged error occurred midmorning and the motion for a mistrial occurred midafternoon on the same day. We do not consider this slight delay to be untimely.

If the motion was timely, should it have been granted? "As a general rule in a trespass action the fact that a defendant is insured is irrelevant and . . . is so prejudicial that it calls for the withdrawal of a juror . . . ." *Deeney v. Krauss,* 394 Pa. 380, 382, 147 A.2d 369, 370 (1959). This general rule is subject to many exceptions. The courts consider whether the reference was ambiguous and whether the insurance mentioned applied to a specific party, *Phillips v. Schoenberger,* 369 Pa. Super. 52, 534 A.2d 1075 (1987); whether the reference to insurance was intentional, *Trimble v. Merloe,* 413 Pa. 408, 197 A.2d 457 (1964); and whether the moving party can demonstrate prejudice, *Gatto v. Kisloff,* 437 Pa. Super. 328, 649 A.2d 996 (1994).

In this case, there is no suggestion the remark was intentionally elicited. Everybody agrees it was not and Mr. Simpson's mention of insurance was not responsive to the question he was asked.

Many of the cases affirm the trial court's denial of a mistrial in these circumstances because of the ambiguity of the reference. It is often difficult to tell which party is insured; *e.g. Phillips v. Schoenberger, supra; Fleischman v. Reading,* 388 Pa. 183, 130 A.2d 429 (1957). There was no ambiguity here; the jury learned that Allied's insurance carrier was interested in the case to the point

where it retained an attorney to prosecute the action against Roberts. Our courts have long recognized that jurors are aware almost everyone has automobile insurance, indeed the law requires it. *Sackson v. Finlayson,* 6 D.&C.2d 514 (1956); 75 Pa.C.S. §1701 et seq. Likewise, it is common knowledge that most people and businesses have fire insurance. It is obviously the business of insurance companies to investigate and adjust losses and the fact that an insurance company might be involved in the background of a court case arising from a fire or automobile accident would surprise no one. But we do not believe it is common knowledge that fire insurance companies often pursue their subrogation rights against those whom they perceive to be responsible for the fire. This was not some reference to an insurance adjuster for one of the parties at the fire scene as occurred in *Dolan v. Carrier Corporation,* 424 Pa. Super. 615, 623 A.2d 850 (1993), where the jury might have assumed that the investigator was inspecting the damage to begin the process of settling with the insured. Here was a reference to insurance which informed the jury that: (1) Allied's loss was insured; (2) Allied had been paid for its loss; and (3) Allied's insurance carrier was trying to recover that payment from Roberts, who it deemed responsible for the fire. Furthermore, the company was not identified with a nameless adjuster at a distant and bygone fire scene, but was incarnate before the jury in the person of Allied's trial counsel, the same person who called Roberts as on cross-examination.

Having determined that the reference to insurance was unintentional, but direct and unambiguous, we next consider whether it was prejudicial to Allied. Obviously, there

is no way to know whether Allied's cause was in fact damaged by Mr. Simpson's statement because there is no way to review the jury's deliberations. In these situations we must decide how the improper influence would likely affect a typical juror.

"[I]t has been widely recognized that the test for determining the prejudicial [impact] of an extraneous influence is an objective one. In order to determine whether an extraneous influence is prejudicial, a trial judge must determine how an objective, typical juror would be affected by such an influence." *Carter by Carter v. U.S. Steel Corp.,* 529 Pa. 409, 420, 604 A.2d 1010, 1016 (1992).[1]

Weighing Mr. Simpson's statement from this perspective, we cannot escape the conclusion that it indelibly impacted this trial. In our opinion, a typical juror would be swayed by the knowledge that Allied had been made whole, that an insurance company, which exists to collect premiums with which to pay claims, was attempting to reimburse itself above what it had collected in premiums to recover from a man who had lost his business and almost his life. We are supported in this opinion by Pa.R.C.P. 2002(d), which permits a subrogee to pursue a claim in the name of the insured alone.

"Furthermore, when suit is commenced in the name of the insured alone, the cause of action will be pleaded as though there were no subrogation. The pleading will contain only the statement of the cause of action against

---

1. Although *Carter* dealt with a newspaper article that the jurors read, or might have read, the test is still the same. Whether the juror read it in a newspaper or heard it in court, it was still both prejudicial and irrelevant.

the defendant and the damages claimed. There will be no reference to insurance, to payments made thereunder, or to subrogation." *Hillworth v. Smith,* 425 Pa. Super. 17, 22, 624 A.2d 122, 124 (1993).

Here, Mr. Simpson's statement had the effect of forcing Allied to proceed in this case as though Pa.R.C.P. 2002(d) was not available to it. We believe justice requires that Allied and its subrogee have the opportunity to pursue its claim with the benefit of all the relevant Rules of Civil Procedure. For the same reason, we believe our curative instruction was inadequate. Probably any curative instruction would have been inadequate under the circumstances. We cannot force a party to proceed without the protection of a specific rule of civil procedure, which was promulgated for use in precisely this kind of situation, and then cure the problem by instructing the jury to forget what it heard and decide the case as though no subrogation existed. It is too much to ask of a jury.

The motion of Allied Electrical Supply Company for post-trial relief is granted and it is awarded a new trial.

## ORDER

And now, August 16, 2001, the court grants the motion of Allied Electrical Supply Company for post-trial relief and awards it a new trial. The prothonotary is directed to list this case on the next available pretrial conference list.