**[J-85-2019] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

MENDY TRIGG, INDIVIDUALLY AND SMITHFIELD TRUST, INC., AS THE GUARDIAN OF THE ESTATE OF J. T., A MINOR,

                Appellees

          v.

CHILDREN'S HOSPITAL OF PITTSBURGH OF UPMC,

                Appellant

: No. 3 WAP 2019
:
:
: Appeal from the Order of the
: Superior Court dated May 14, 2018
: at No. 1041 WDA 2017, vacating the
: Judgment of the Court of Common
: Pleas of Allegheny County entered
: June 28, 2017 at No. GD 13-002322
: and remanding.
:
: ARGUED: October 15, 2019
:
:
:
:
:

**CONCURRING OPINION**

**JUSTICE WECHT**                                  **DECIDED: APRIL 22, 2020**

We accepted review of this case to determine whether the court of common pleas erred in failing to observe the demeanor of prospective jurors who were challenged for cause during jury selection. Appellees failed to preserve their claim in the trial court. Appellees' waiver of their claim precluded the Superior Court from considering it. We therefore are constrained to reverse the Superior Court. Although this Court can provide no relief in this case, Allegheny County's civil jury-selection process gives cause for serious concern.

In their medical malpractice action against UPMC Children's Hospital of Pittsburgh ("UPMC"), Appellees filed suit in Allegheny County. Pursuant to Allegheny County Local Rules of Civil Procedure, neither the calendar control judge nor the trial judge oversees *voir dire*. Rather, jury selection occurs in the jury assignment room, presided over by a

clerk. The clerk asks the prospective jurors general questions, which are prescribed by the local rules. Maj. Op. at 3. Once the general questions have concluded, the clerk asks questions of each prospective juror individually. *Id.* at 4. Following questioning by the clerk, counsel for both parties are afforded the opportunity to ask "reasonable" follow-up questions. *Id.* In the event a challenge arises during *voir dire*, the parties must leave the room and report to a judge elsewhere in the building, who will then hear and rule upon the challenge. This is not the judge who will try the case but is instead the calendar control judge, whose several duties include jury selection issues.

Consistent with this practice, Appellees and UPMC posed follow-up questions to the prospective jurors under the supervision of a clerk. Appellees questioned prospective juror number 29 regarding her feelings about medical malpractice actions. The prospective juror indicated that she might not be able to be fair and impartial because she had family members who were doctors and nurses. Appellees challenged this prospective juror, and two others, for cause.

In accordance with Allegheny County practice, counsel for both parties then departed the jury assignment room and walked to the courtroom of the calendar control judge to present their for-cause challenges. The judge asked Appellees to proceed with their objections. Appellees' counsel asked whether the judge would like to read the transcripts of the prospective jurors' *voir dire*. The judge replied, "Whatever you would want to do to make your record on your objection, go right ahead." *See* Maj. Op. at 6 (citing Notes of Testimony ("N.T.") 3/17/2017, at 201). Appellees' counsel responded that "it would be easier" and "quicker" if the judge read the transcripts, as opposed to bringing the challenged jurors into the courtroom to once again subject them to questioning. *Id.* (citing N.T. 3/17/2017, at 201-02). The judge read the transcripts and denied the for-

cause challenges. Appellees then used their peremptory challenges to exclude these jurors. Trial commenced, resulting in a defense verdict.

Like the Majority, I conclude that Appellees waived their argument that the court erred by not observing *voir dire*. Maj. Op. at 13. Not only did Appellees fail to object in pretrial motions to the judge's absence during *voir dire*, they failed to make a contemporaneous objection to the judge's absence when advancing their for-cause challenges. *See* Pa.R.C.P. 227.1(b).

Whether by strategy or inadvertence, or perhaps a sense of futility in the face of long-standing (albeit erroneous) Allegheny County practice, Appellees' counsel waived the challenge to the *voir dire* process and to the judge's failure to observe the prospective jurors during *voir dire*. Appellees are bound by this waiver. In order to preserve an issue for appellate review, counsel must place a timely, specific objection on the record. *See Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 45 (Pa. 2011); *Straub v. Cherne Indus.*, 880 A.2d 561, 566 (Pa. 2005); *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116-17 (Pa. 1974). Issues that are not preserved by specific objection in the lower court are waived. Pa.R.A.P. 302(a); *Straub*, 880 A.2d at 617-18. Because Appellees failed to make a specific objection before the trial court, the Superior Court exceeded the scope of appellate review by considering an issue that was not preserved.

The obligation to preserve claims of error for a litigant falls upon counsel. The classic definition of waiver is the "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). To preserve an objection for appellate review, "trial counsel is required to make a timely, specific objection during trial." *Takes v. Metro. Edison Co.*, 695 A.2d 397, 400 (Pa. 1997). There are two benefits of timely preservation:

> (1) a timely objection made to the trial court gives that court the opportunity
> to take immediate corrective action, which promotes efficiency in the judicial

process by allowing litigants to avoid incurring unnecessary expense and delay by being forced to resort to the appellate process; and (2) it offers a predictable and neutral standard for appellate review of claims of trial court error which is applicable to all cases, unlike the [plain error] standard which was inconsistently applied by appellate courts on a case by case basis.

*SugarHouse HSP Gaming, L.P. v. Pa. Gaming Control Bd.*, 162 A.3d 353, 365 (Pa. 2017) (citing *Dilliplaine*, 322 A.2d at 117).

As we have explained, "[r]equiring a specific objection on the record 'remove[s] the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions." *Jones v. Ott*, 191 A.3d 782, 788 (Pa. 2018) (quoting *Dilliplaine*, 322 A.2d at 117). It prevents a trial from turning into "merely a dress rehearsal." *Id.*

A timely objection affords the court the opportunity to remedy the alleged error. Here, Appellees' counsel deprived the court of the opportunity to remedy any defects when he acquiesced without objection to the procedure established in Allegheny County. By the time counsel alleged in post-trial motions that the trial court erred in not striking prospective juror 29 for cause based upon that prospective juror's demeanor outside of the observation of the trial court, the damage was done and was not subject to correction by the trial court.

Because counsel's waiver results in the relinquishment of the client's rights, an attorney representing a client is obligated to invest some thought into the future progression of the case. To succeed on appeal, counsel is obligated to take affirmative steps to build a record. This is so even where counsel does not believe that a timely objection will remedy the challenged conduct. But even if counsel is certain that the court will overrule the objection, the objection is not futile. Rather, an overruled objection becomes the basis of an appeal. One cannot succeed on appeal by wasting the opportunity to preserve an issue at trial. Even before trial, counsel must anticipate appellate issues and exercise forethought, laying the groundwork for appeal. It is the

obligation of every attorney to keep the trial record clear, correct, and complete so that there is an accurate history of the proceedings. Without constructing a record, the possibility of appellate review is circumscribed by counsel's failures.

Like Justice Donohue, I have deep misgivings about *voir dire* that is conducted outside the presence of a judge. *See* Concurring Op. at 3.[1] As Justice Donohue cogently explains, *"[v]oir dire* is an essential component of our constitutional right to trial by jury." *Id.* (citing PA. CONST. art. 1, § 6; *Bruckshaw v. Frankford Hosp. of Phila.*, 58 A.3d 102, 108-09 (Pa. 2012)). It is the process by which courts secure a fair and impartial jury.[2]

In *Shinal v. Toms*, 162 A.3d 429, 441-42 (Pa. 2017), this Court established two standards of review applicable when an appellate court reviews the trial court's denial of a challenge for cause. The applicable standard will depend upon whether the prospective juror was challenged based on presumed prejudice or actual prejudice. Presumed prejudice arises from a juror's close relationship to the case, while actual prejudice is revealed through the juror's "conduct and answers" during *voir dire*. *Id.* at 441. When a

---

[1]    In this regard, I join the Majority in noting that Allegheny County has very recently revised its local rules to allow for the possibility of some meaningful judicial role in civil *voir dire*. *See* Maj. Op. at 3, n.3 (citing A.C.L.R.C.P. 212.2(d) (effective Feb. 8, 2020)). Whether this new development has ensued as a result of this litigation or rather from other causes, it is at all events to be welcomed. But it should begin the process of reform, not end it. It may well be that Allegheny County's civil trial rotation list tradition should finally yield to a modern system of individual trial judge dockets as is the rule in federal courts and in many state courts. Detailed contemplation of such issues must be left to the wisdom and experience of the common pleas judges of Allegheny County in the first instance.

[2]    Prior to the commencement of jury selection, the calendar control judge advised counsel of his views regarding for-cause challenges to prospective jurors. In particular, the judge explained that he did not perceive the prospective juror's life-experiences as disqualifying. N.T., 3/17/17, at 14. As we have explained, "[c]hallenges for cause are essential means by which to obtain a jury that in all respects is impartial, unbiased, free from prejudice, and capable of judging a case based solely upon the facts presented and the governing law." *Shinal v. Toms*, 162 A.3d 429, 438 (Pa. 2017). Contrary to the judge's view, life experiences certainly may render a prospective juror partial, biased, or prejudiced, incapable of deciding a case on the facts and governing law.

prospective juror reveals a likelihood of prejudice through conduct and answers to questions during jury selection, we defer to the trial court's determination and will only reverse upon an abuse of discretion. *Id.* at 443.

The reason we defer to the trial court is simple: personal observation. We defer to the trial judge because it is the trial judge's function to ensure the empaneling of a fair and impartial jury and to assess the juror's demeanor, conduct, and answers. *Shinal*, 162 A.3d at 442 (explaining that the reason that an appellate court will defer to the trial judge's assessment of a prospective juror is "because it is he or she that observes the juror's conduct and hears the juror's answers"). As we explained:

> [T]he juror appears before [the trial judge, who] sees him and hears what is said; and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt, and nervousness indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered. As it is not possible to bring these matters to our attention, the trial judge's view should be given great weight in determining the matters before him.

*Id.* (quoting *Commonwealth v. Gelfi*, 128 A. 77, 79 (Pa. 1925)). It is the court's observation of the potential juror's conduct and demeanor during *voir dire* that warrants deference.

Answers, without demeanor, paint only half the picture. Demeanor and answers together help paint for the judge a picture of the state of mind, personality, and credibility of the prospective juror; one cannot be separated from the other. Demeanor encompasses all of the subtle non-verbal cues that comprise communication, such as facial expressions, body language, hesitation, nervousness, tone, inflection, and gestures. All of these can communicate a potential bias that may not be apparent from the words on the page. As the Superior Court in this case observed, physical and verbal cues, such as "a juror['s] furtive glance, a tremor of voice, a delayed reply, a change in

posture, or myriads of other body language" all make up the answers to a question, and are part of the basis for a challenge to the potential juror's response. *Trigg v. Children's Hosp. of Pittsburgh of UPMC*, 187 A.3d 1013, 1017 (Pa. Super. 2018); *see also Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (recognizing that challenges to prospective jurors are often based upon "a juror's demeanor (*e.g.,* nervousness, inattention), making the trial court's firsthand observations of even greater importance"); *Commonwealth v. Robinson*, 864 A.2d 460, 490 (Pa. 2004) (noting that it is the trial judge "who sees and hears the juror, and, in the exercise of a wide discretion, may conclude that he is not competent to enter the jury box for the purpose of rendering an impartial verdict") (quoting *Commonwealth v. Sushinskie*, 89 A. 564, 565 (Pa. 1913)). Because the foundation of appellate deference to *voir dire* rulings is such observation, the lack of personal observation by the judge ruling on for-cause challenges undermines the rationale for deference quite thoroughly.

In this case, the court's conclusion that the answers of prospective juror 29 revealed that she could be fair and impartial was limited by what the calendar control judge was able to perceive from the record, a cold record that an appellate court is equally equipped to view. Had the judge been in the courtroom, he also would have been able to assess the juror's hesitation, doubt, nervousness, or non-verbal cues that may have indicated an unsettled frame of mind. Without personal observation, we will not defer to the trial court's resolution of for-cause challenges based upon actual prejudice.

Like Justice Donohue, I do not believe that calling the prospective juror in before the judge for a second round of questioning sufficed to replicate the opportunity for personal observation that the judge already missed. *See* Concurring Op. at 2-3. Knowing

he or she is undergoing additional scrutiny, any prospective juror would consciously or unconsciously recalibrate his or her answers during this second round of questioning. This is not the functional equivalent of the judge's presence during *voir dire*. *Id*. at 3.

I agree as well with Justice Donohue's observation that the unequal treatment of jury selection in criminal and civil trials contained within our procedural rules cannot be justified given the critical function performed by the judge overseeing *voir dire* in both species of trials. *Compare* Pa.R.Crim.P. 631(A), *with* Pa.R.C.P. 220.3. Our Civil Procedural Rules Committee should examine and address this disparate treatment.

Justice Dougherty joins this concurring opinion.