695 A.2d 397

Steven M. TAKES and Catherine C. Takes, his wife, Appellants,

v.

METROPOLITAN EDISON COMPANY,
a corporation, Appellee,

and

Steven M. Takes, d/b/a El Greco Painting
Company, (Additional Defendant).

Supreme Court of Pennsylvania.

Argued Dec. 11, 1996.

Decided May 20, 1997.

Reargument Denied Aug. 11, 1997.

Ronald W. Shipman, Easton, George C. Diamantopulos, Pittsburgh, for Steven and Catherine Takes.

Robertson B. Taylor, Bethlehem, Richard T. Wentley, Joseph T. Moran, Pittsburgh, for Metropolitan Edison Company.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NIGRO, Justice.

The issue before this Court is whether the Superior Court erred in affirming the trial court's finding that Appellee timely objected to a flawed punitive damages charge. Because we conclude that Appellee failed to timely and specifically object, we reverse the Superior Court's decision as it pertains to the punitive damages issue.

Appellee, Metropolitan Edison Company ("Met–Ed"), is a utility company which supplies electricity to eastern Pennsylvania. In the fall of 1987, Met–Ed decided to have several of

its electrical substations painted. Appellant, Steven Takes ("Takes"), had thirty years experience as an industrial painter, including painting electrical powerstations. Through his company El Greco Painting ("El Greco"), Takes submitted the lowest bid for painting a number of de-energized Met–Ed substations and was awarded the contract.[1] The one substation that Met–Ed could not de-energize was awarded to a different contractor.

Painting began in October of 1987. Takes and his crew completed painting five of the substations and started to work on the Dock Street substation in Easton, Pa. Unbeknownst to Takes, the substation had been de-engerized except for a 4,800 volt capacitor which was not roped off nor were any warning signs posted. Takes climbed the capacitor's structural housing and was painting it when an enormous electric shock knocked him off his perch, causing him to fall ten feet to the ground.

Takes suffered serious injuries from the electric shock and fall. The electric current destroyed a finger on his hand which required amputation, and left leathery black entrance and exit wounds on both sides of his body. The fall broke two ribs and fractured his scapula. Additionally, Takes now suffers from severe depression, Post–Traumatic Stress Syndrome and endures dizzy spells and blackouts.

Takes and his wife filed a civil action in 1988 against Met–Ed to recover damages for personal injuries. Subsequently, Met–Ed joined Takes, doing business as El Greco Painting Company, as an additional defendant, arguing an indemnification clause required that El Greco indemnify Met–Ed for any injury "caused in whole or in part by the contractor." After joinder, Appellants filed an amended complaint containing a claim for punitive damages.

On February 26, 1992, the trial judge met during trial with all counsel in chambers to discuss the charge and verdict sheet. Met–Ed's attorney argued against any punitive damages charge, but argued that, if one was given, it should be

1. Takes bid to paint only those substations in a de-energized condition.

restricted to a situation where Takes was urged to do his work under known dangerous circumstances. Met–Ed's counsel argued that the jury should not be allowed:

> to wander around in the fact combination with this blanket charge: do you find that they acted in a negligent, willful or reckless manner, is prejudicial to the defense in this instance because it suggests that the Court thinks any combination of the facts they would choose could infer wanton or reckless negligence from those facts and that's just not the case.

(N.T. 2/26/92, RR.512a). After further discussion, Met–Ed's counsel asked, "What happens to my proposition that the application of the [punitive damages] is limited to a fact situation?" *Id.* at 516a. The trial court noted Met–Ed counsel's objection but declined to restrict the charge to a particular factual scenario and decided to give a general punitive damages charge. *Id.* at 517a. Subsequently, the trial court instructed the jury on the issue of punitive damages and the following exchange took place:

> THE COURT: ... The sole purpose of punitive damages ... is to punish Metropolitan Edison's outrageous conduct, if you were to find as such, and to deter Metropolitan Edison from commission of like acts.
>
> Question number nine asks you that very question: Do you find that Metropolitan Edison acted in a grossly negligent, reckless, willful or wanton manner in causing injuries to Mr. Takes, and if you do what damages do you find?
>
> Gentlemen are there any suggested corrections to the punitive damages, additions or corrections to the punitive damages instruction?
>
> MET–ED'S COUNSEL: My only objection, your Honor, is I don't think that you've defined exactly the extent that you've got to go to show reckless.
>
> THE COURT: A person's conduct is outrageous when he acts with a bad motive, or when he acts with a reckless indifference, I'm about to charge that.
>
> MET–ED'S COUNSEL: Fine, Judge.

THE COURT: A person's conduct is outrageous, and included among that would be reckless, negligent, willful or wanton, when that person acts with bad motive or when he acts with indifference to the interests of others. That is the definition with which we approach the issue.

*Id.* at 594a–96a.

After finishing the charge, the trial court again asked for any corrections or additions to the charge whereupon Met–Ed's counsel replied: "Your honor, I restate (Met–Ed's) objection to the court's charging on reckless and intentional and punitive damages." The trial court responded: "Your objection is preserved." *Id.* at 601(a).

After a seven day jury trial in February of 1992, the jury returned a verdict in favor of Appellants, awarding $1,460,-414.00 in compensatory damages and $3 million in punitive damages.[2] When the jury returned with its verdict, Met–Ed's counsel raised no objections on the punitive damages charge. Met–Ed filed Post-Trial Motions and in its brief in support thereof challenged, *inter alia,* that the trial court's jury instruction concerning the definition of outrageous conduct was flawed in that the instruction improperly used negligence terms.[3] Appellants argued that any challenge to the trial court's jury instructions on punitive damages containing negligence terms was waived by Met–Ed's failure to timely and specifically object. In rejecting that challenge, the trial court specifically found that

Met–Ed's primary objection expressed at trial and intended to be preserved revolved around Met–Ed's contention that punitive damages would not lie absent a finding by the jury that Met–Ed's agent knowingly told the plaintiff that the capacitor was deenergized when he knew it was not. The court rejected that contention.

Having determined that Met–Ed preserved its objections to the jury charge on punitive damages, as well as to the

2. The trial court awarded $515,316.35 in delay damages, resulting in a total verdict of $4,975,730.35.

3. This issue was not raised in Post-Trial Motions, but was raised for the first time in Met–Ed's brief in support thereof.

jury interrogatory concerning punitive damages, we now address the substantive issues raised by Met–Ed. (trial court opinion 2/26/93 at p. 6).

After a review of the merits of Met–Ed's objections, the trial court denied Met–Ed's Motion for Post–Trial relief.

Subsequently, the parties filed their respective appeals with the Superior Court. Both appeals were briefed and argued before a panel of the Court consisting of Judges Wieand, Olszewski, and Popovich. Judges Olszewski and Popovich affirmed the trial court order, specifically finding that Met–Ed waived any objections to the flawed instructions regarding punitive damages. Judge Wieand dissented, finding there had not been a waiver.

Met–Ed filed an application for reargument *en banc* which was granted by per curiam order. After submission of briefs and argument, the Superior Court affirmed the verdict and judgment for compensatory damages but reversed and vacated the verdict for punitive damages, awarding a new trial limited to the issue of punitive damages. Judge Olszewski, joined by Judges Cirillo and Popovich, filed a dissenting opinion and concluded that Met–Ed waived objections to the punitive damages charge by not specifically and timely objecting that the charge was flawed during the trial or in post-trial motions. By Order dated July 15, 1996, this Court granted the Appellants' Petition for Allowance of Appeal limited to the question of whether the Superior Court erred in affirming the trial court's finding that Met–Ed timely objected to the flawed punitive damages charge.

■ We find that the record unquestionably demonstrates that Met–Ed failed to timely and specifically object to the erroneous punitive damage charge.[4] The lower court miscon-

---

4. It is undisputed that the trial court committed error by improperly permitting the jury to consider negligence concepts in the determination of the right to punitive damages. Takes' trial counsel and the trial court took the position that the jury instructions were not flawed since the overall charge required any conduct to rise to the level outrageousness. However, the Superior Court found "the trial court committed error in that it improperly permitted negligence concepts in the determination of the right to punitive damages." *Takes v. Metropolitan*

strues our decision in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974) and mistakenly concludes that the issue was preserved despite the absence of proof in the record.

It is axiomatic that in order to preserve a trial objection for review, trial counsel is required to make a timely, specific objection during trial. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 260, 322 A.2d 114, 117 (1974); *see also Broxie v. Household Finance Company*, 472 Pa. 373, 372 A.2d 741 (1977). In *Dilliplaine*, this Court eliminated the usage of the "basic and fundamental error" doctrine as a means of achieving appellate review of trial error. We emphasized that "(r)equiring a timely specific objection to be taken in the trial court will ensure that the trial judge has a chance to correct alleged trial errors." *Dilliplaine* at 258, 322 A.2d at 116. The waiver rule prevents the trial from becoming a mere dress rehearsal and ensures trial counsel is prepared to litigate the case and create an adequate record for appellate review. *Id.* Moreover, this Court has stressed the importance of the waiver doctrine numerous times, most recently in *McMillen v. 84 Lumber, Inc.*, 538 Pa. 567, 649 A.2d 932 (1994).

The Superior Court majority concludes from the in-chambers discussion that Met–Ed's counsel "verbalized an objection to a charge which would permit elucidation of negligence concepts in the punitive damage charge." *Takes* at 108, 655 A.2d at 141. However, as the dissenting Superior Court Judges cogently observed, this conclusion is wrong. Clearly, Met–Ed's counsel objected over the trial court's refusal to define outrageousness in terms of a fact-limited scenario. Notably, the trial court itself concluded that this exchange concerned its refusal to define outrageousness in terms of a particular fact situation. (trial court opinion, 2/26/93 at p. 6). This is the only instance where the trial court makes a specific determination about issue preservation and the trial court fails

*Edison,* 440 Pa.Super. 101, 107, 655 A.2d 138, 141 (1995). Since neither negligence nor gross negligence can support an award for punitive damages, Met–Ed needed to bring this error to the attention of the trial court.

to cite anywhere in the record where Met–Ed's counsel raised a specific objection to the use of "negligent" in the charge or to the use of "grossly negligent" in Jury Interrogatory No. 9. Moreover, Met–Ed's counsel uses the same erroneous terminology found in the flawed verdict interrogatory by employing the word "negligence" in describing the reckless indifference standard for punitive damages.

If there was any question as to whether Met–Ed timely objected to the flawed charge, Met–Ed's Post–Trial Motions eliminate that doubt. Not only did the Motions make no mention of the trial court's error using negligence terms in defining punitive damages, the Motions continued to define outrageousness in terms of negligence. The only punitive damages issue Met–Ed raised was the issue it clearly preserved: whether punitive damages should be defined based on a fact-limited scenario. Clearly, the waiver is obvious, not just from the unequivocal absence of a specific objection at trial but also because of its prominent absence from the Post–Trial Motions.

■ Generally, an appellate court should defer to a trial court's specific recollections concerning issue preservation. Blind deference, however, would eradicate the entire purpose of ensuring that an adequate trial record is created for appellate review. We are cognizant of the fact that there have been instances where an issue was found to have been waived and the appellate court has deferred to the trial court's decision to address it anyway.[5] *See James v. Nolan,* 418 Pa.Super. 425, 427 n. 1 & n. 2, 614 A.2d 709, 710–11, n. 1 & n.2

---

**5.** It is necessary to emphasize that the central thrust of this action involves an issue of substantive rather than procedural waiver. If Met–Ed had simply failed to include the flawed punitive damages issue in its Post–Trial Motions, then the trial court could elect to disregard the waiver and the reviewing appellate court would be bound to do so as well. *American Association of Meat Processors v. Casualty Reciprocal Exchange,* 527 Pa. 59, 67, 588 A.2d 491, 495 (1991). In *American* this Court clarified that the purpose of Pa.R.C.P 227.1 is to effect the waiver doctrine in *Dilliplaine,* to bring errors to the trial court's attention for correction. Yet, in this action Met–Ed's counsel failed to bring the flawed charge to the attention of the trial court. The waiver did not result from a mere procedural rule violation but from a violation of the substantive law as contained in *Dilliplaine.*

(1992); *Smith v. Brooks,* 394 Pa.Super. 327, 340 n. 2, 575 A.2d 926, 932 n. 2 (1990), *appeal denied* 527 Pa. 621, 592 A.2d 42 (1991). However, unlike the present action, in both of those cases the deference came at no cost to the parties since the trial court was affirmed and no new trials were required.[6]

■ A trial court may not eliminate the entire purpose of making a record and invalidate the directive in *Dilliplaine* simply by addressing an issue. Instantly, simply because the trial court erroneously treated the flawed punitive damages charge objection as having been preserved, the Superior Court is not bound by that conclusion. As stated in the Superior Court dissenting opinion, waiver shines forth from this record like a beacon. For the Superior Court majority to employ such blind deference significantly eviscerates the waiver principle established by this Court. *McMillen, supra, Dilliplaine, supra.*

Accordingly, the Order of the Superior Court as it pertains to punitive damages is reversed.

ZAPPALA and CAPPY, JJ., concur in the result.

---

**6.** In *James* and *Smith,* the lower courts chose to address issues on the merits simply because the trial court chose to do so, despite the fact that the issue was waived. However, in none of those cases did the deference provided implicate the *Dilliplaine* rule since the trial court decision was affirmed without creating the "dress rehearsal" problem sought to be avoided. In contrast, here the consequence of deference is a new trial, in direct conflict with the policy behind this Court's declaration in *Dilliplaine.*