## Dooner v. DiDonato

CP. of Philadelphia County, May Term, 2004, no. 4108.

*Brian J. Grady,* for plaintiffs.
*Scott W. Reid,* for defendant DiDonato.

*Thomas A. Kuzmick,* for defendant Philadelphia Stock Exchange.

QUIÑONES ALEJANDRO, *J.,* October 20, 2006—

## INTRODUCTION

This appeal involves a matter of first impression in Pennsylvania stemming from an assault and battery inflicted by a stock trader (Ralph DiDonato) against another stock trader (William J. Dooner) while employed at the Philadelphia Stock Exchange (PSX). As a result of the attack, plaintiff-husband and his wife, Maureen Dooner, filed on May 28, 2004, a civil action against defendant DiDonato and defendant PSX averring counts of assault and battery, negligence, negligent supervision, intentional infliction of emotional distress and punitive damages. Plaintiff-husband claims that in the assault, defendant DiDonato yanked him downward causing him to suffer serious injuries. A jury subsequently found in favor of plaintiffs and against both defendants and assessed comparative negligence among the parties.

Thereafter, defendant PSX *only* filed a post-trial motion for judgment n.o.v. and/or a new trial, which was denied by this trial judge. Dissatisfied, defendant PSX filed this appeal essentially contending that this trial judge incorrectly denied its post-trial motion and erred when finding that plaintiffs' claims were not federally preempted, when ruling on numerous evidentiary matters, and when charging the jury. This trial judge disagrees.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

It is reasonable to infer that the jury considered the following relevant facts when rendering its verdict:

At the time of the incident, plaintiff-husband was employed as a SOX trader working on the floor of defendant PSX.[1] Defendant DiDonato worked as a registered equity options trader for another company also on the floor of defendant PSX.[2] Defendant PSX is a national securities exchange, a self-regulating organization, established and governed by Congress and the National Exchange Act,[3] and registered with the Securities and Exchange Commission (SEC) pursuant to the Securities Exchange Act of 1934.

On December 4, 2002, defendant DiDonato had arrived at the trading floor earlier than plaintiff-husband, set up his computer and left the immediate area.[4] A few minutes later, plaintiff-husband arrived, moved defendant DiDonato's computer and situated himself in the spot where defendant DiDonato had previously set up his computer. He did so relying on an alleged practice in the work culture of defendant PSX that if a spot was unattended, it was open for the taking.[5] When defendant DiDonato returned to his computer he found plaintiff-husband in his spot. Angered, defendant DiDonato grabbed plaintiff-husband from behind, yanking him backward and causing him to strike his head, which briefly rendered him unconscious.[6] When he regained consciousness he complained of being disoriented, dizzy, and having a headache and pain in his back and neck.[7]

---

1. N.T. 2/27/06, 250:2-4.
2. *Id.* at 211:10-12.
3. *Id.* at 144:21-25—145:1-3.
4. N.T. 2/27/06, 268:1-6.
5. *Id.* at 269:4-15.
6. *Id.* at 264:5-9, 274:11-20.
7. *Id.* at 274:11-20.

Robert T. Roth, plaintiff-husband's immediate supervisor, approached him to ascertain his condition.[8] A member of defendant PSX, Barry Nobel, asked Roth to make sure plaintiff-husband was taken to a hospital for medical attention.[9] Since no one had called 911 for medical assistance, Roth called a cab and accompanied plaintiff-husband to the Thomas Jefferson University Hospital.[10] There, plaintiff-husband was admitted and underwent a CAT scan and a MRI.[11] Plaintiff-husband left the hospital against medical advice[12] after receiving a telephone call from his crying wife who told him that she had just learned that her father had been diagnosed with lung cancer and had six months to live.[13] Prior to leaving the hospital, plaintiff-husband received a prescription for Tylenol with codeine, Vicodin and Flexeril.[14]

When plaintiff-husband arrived at his home, he immediately called his family physician for an appointment. He was subsequently diagnosed with whiplash and a sprain. His physician also prescribed Tylenol with codeine, Vicodin and Fexeril. Plaintiff-husband continues to take Flexeril, a muscle relaxant, and Naproxen, to sleep.[15] He has also received epidural injections in the neck[16] administered by a Dr. Hale, a specialist in pain

8. *Id.* at 109:2-7.
9. *Id.* at 110:2-11.
10. *Id.* at 110:7-20.
11. *Id.* at 275:13-18.
12. *Id.* at 275:21-24.
13. *Id.* at 277:14-19.
14. *Id.* at 278:19-22.
15. *Id.* at 279:21-23.
16. *Id.* at 16:7-15.

management. Additionally, plaintiff-husband has unsuccessfully undergone a series of physical therapy sessions to relieve his pain.[17]

As a result of the injuries suffered, Plaintiff-husband was unable to return to his employment as a stock trader.[18] He remained unemployed for a period of 10 months[19] before he obtained employment as a roofing estimator for Home Depot, at a significant decrease of income.[20]

Testimony offered at trial by several witnesses described the work environment on defendant PSX's trading floor as hostile, competitive, cramped and violent.[21]

Procedurally, plaintiffs filed this civil suit against defendant PSX, John Wallace and defendant DiDonato. By order dated February 28, 2006, the Honorable Gregory E. Smith granted defendant Wallace's motion for summary judgment and dismissed him, with prejudice, from the case.

Discovery ensued and a jury trial was scheduled. On March 7, 2006, after a five-day trial, the jury found in favor of plaintiffs and against both defendant PSX and defendant DiDonato in the amount of $1,800,000. The jury also assessed comparative negligence among the parties; to wit: plaintiff-husband was found to be 20 percent negligent, defendant DiDonato 30 percent negligent, and defendant PSX 50 percent negligent. Additionally, the jury returned a verdict in favor of plaintiff-wife for loss of consortium claim in the amount of $135,000.

17. N.T. 2/28/06, 68:13-18.
18. N.T. 2/28/06, 19:5-21.
19. *Id.* at 20:4-6.
20. *Id.* at 23:24-25—24:1-25.
21. N.T. 2/27/06, 89:8-13.

On March 8, 2006, plaintiffs filed a petition for delay damages. On March 13, 2006, defendant PSX filed a motion for post-trial relief. Oral argument was heard and by an order dated June 15, 2006, this trial court judge denied defendant PSX's post-trial motion. By order dated June 16, 2006, this trial judge granted plaintiffs' petition for delay damages and molded the verdict award to reflect plaintiff-husband's comparative negligence (a reduction of $387,000) and the delay damages award (an addition of $72,501.50), for a total verdict award in the amount of $1,620,501.50.

On July 11, 2006, defendant PSX filed the instant appeal with the Superior Court.

## ISSUES

In response to an order issued on July 12, 2006, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), defendant PSX on July 25, 2006, filed of record and served onto this trial judge a statement of matters complained of on appeal and averred that this trial court erred and/or abused its discretion:

(1) in failing to find that the plaintiffs' claims against defendant Philadelphia Stock Exchange were federally preempted, in that the conduct at issue was governed by the Rules of the Philadelphia Stock Exchange, which were approved by the Securities and Exchange Commission through its quasi-legislative authority as granted it by the United States Congress and, consequently, in denying defendant Philadelphia Stock Exchange's motion for summary judgment, motion for nonsuit, motion for direct verdict and motion for post-trial relief on that basis;

(2) in failing to find that defendant Philadelphia Stock Exchange, as a possessor of land not held open to the public, did not have a duty to protect against the criminal acts of third parties nor a duty to provide a security program beyond any gratuitous security program it undertook, but rather only a duty to protect individuals from injury arising out of its own negligent failure to maintain the premises in a safe condition;

(3) in allowing Ira Somerson, plaintiffs' liability expert, to testify to improper conclusions of law regarding the duty of care owed by the Philadelphia Stock Exchange;

(4) in providing conflicting jury charges regarding the duty of care owed by the Philadelphia Stock Exchange, namely plaintiffs' proposed points 23, 24 and 25, since they provided for a much higher standard of care than that imposed by Pennsylvania law on a possessor of land that is not held open to the public;

(5) in permitting plaintiffs' medical expert, Dr. Gene Salkind, to testify over defendant Philadelphia Stock Exchange's objections that plaintiff William Dooner is medically incapable of working as a trader at the Philadelphia Stock Exchange, despite the fact that the opinion was not set forth in Dr. Salkind's expert report and caused unfair surprise, and consequently, in denying defendant Philadelphia Stock Exchange's motion for post-trial relief on that basis;

(6) in failing to find that the testimony of Terry Leslie, plaintiffs' vocational expert, regarding lost wages and/ or lost earning capacity was improperly speculative in nature because he could not differentiate what portion of plaintiff William Dooner's lost earning capacity was attributable to his alleged neck injury for which he was

seeking recovery at trial and what portion of his lost earning capacity was attributable to his unrelated back condition;

(7) in allowing Mr. Leslie's testimony which was improper based upon the inadmissible testimony of Dr. Gene Salkind, and, consequently, in denying defendant Philadelphia Stock Exchange's oral motion in limine, motion for nonsuit, motion for directed verdict and motion for post-trial relief on that basis;

(8) in failing to enter a directed verdict against defendant Ralph DiDonato based on his admission that he committed an assault and battery; to include a proximate cause/substantial factor question on the verdict sheet regarding defendant Ralph DiDonato's admitted assault and battery; charging the jury on the issue of negligence as to all defendants, notwithstanding defendant Ralph DiDonato's admitted assault and battery, which caused confusion to the jury and, consequently, in denying defendant Philadelphia Stock Exchange's motion for directed verdict and motion for post-trial relief on that basis; and

(9) in failing to find that the jury's verdict was contrary to the law, that the jury's verdict was against the weight of the evidence, that the jury's verdict was excessive, and, consequently, in denying defendant Philadelphia Stock Exchange's oral motion in limine, motion for nonsuit, motion for directed verdict and motion for post-trial relief on that basis.

## LAW AND DISCUSSION

Succinctly, defendant PSX essentially avers that this trial judge erred and/or abused her discretion regarding

the following issues: federal preemption, liability of the possessor of land, challenges to expert testimony, improper jury instructions, and failure to grant a directed verdict against defendant DiDonato; and is, therefore, entitled to either a new trial or judgment n.o.v. This trial judge disagrees and will address defendant PSX's arguments seriatim.

It is undisputed that the decision to grant and/or deny a request for a new trial is within the sound discretion of the trial court.[22] An appellate court may not disturb a trial court's ruling unless the trial court palpably abused its discretion and/or committed an error of law.[23] An abuse of discretion is not merely an error of judgment. An abuse of discretion occurs if, in reaching a conclusion, a law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record.[24] However, an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion. To be clearly erroneous, the trial court's action requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or lack of support.[25]

A new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of jus-

22. *Andrews v. Jackson,* 800 A.2d 959, 962 (Pa. Super. 2002), *appeal denied,* 572 Pa. 694, 813 A.2d 835 (2002). (citation omitted)

23. *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 636 (1995) (citations omitted); *Andrews,* 800 A.2d at 962.

24. See *Fanning v. Davne,* 795 A.2d 388, 393 (Pa. Super. 2002), citing *Paden v. Baker Concrete Construction Co. Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995).

25. *Fanning,* 795 A.2d at 393.

tice.[26] However, a new trial should not be granted because of a mere conflict in testimony or some irregularity which occurred during trial or because the trial judge, on the same facts, would have arrived at a different conclusion.[27] Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion.[28] That is, the trial court must decide whether any factual, legal, or discretionary mistake occurred during trial; and if so, determine whether the mistake warrants the granting of a new trial, or whether it was merely a harmless error.[29] The moving party must demonstrate that prejudice was suffered because of the mistake.[30]

## Federal Preemption

Defendant PSX's principal argument is that as a national securities exchange registered with the Securities and Exchange Commission pursuant to the Securities Exchange Act of 1934,[31] all state tort claims against it are federally preempted. Defendant PSX further contends, in general terms and without identifying such, that the bylaws and rules of the Philadelphia Stock Exchange, which were approved by the SEC and authorized by the United States Congress, federally preempt plaintiffs' claims and strip this trial court of jurisdiction.

---

26. *Neison,* 539 Pa. at 520, 653 A.2d at 636.

27. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 469, 756 A.2d 1116, 1123 (2000).

28. *Harman,* 562 Pa. at 467, 756 A.2d at 1122.

29. *Id.*

30. *Id.*

31. This Act may be cited as the Securities Exchange Act of 1934. See 15 U.S.C.S. §78a.

Research on this issue did not uncover any Pennsylvania case on point, statute, or regulation regarding the preemption of state tort claims in matters involving an organization regulated by federal statute, such as defendant PSX. Therefore, a very brief analysis of the law of preemption, the legislative history of the Securities and Exchange Act of 1934, and existing persuasive case law of other jurisdictions follows to support this trial judge's opinion that preemption does not exist.

The preemption doctrine, which has its roots in the Supremacy Clause, United States Constitution, Article VI, Clause 2, requires an examination of congressional intent.[32] Preemption "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose."[33] Absent explicit preemptive language, Congress' intent to supersede state law altogether may be inferred because "[the] scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose."[34]

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified

---

32. *Fidelity Federal Savings and Loan Association v. de la Cuseta*, 458 U.S. 141, 153, 102 S.Ct. 3014 (1982).

33. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).

34. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

to the extent that it actually conflicts with federal law.[35] Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility,"[36] or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[37]

The Securities Exchange Act of 1934 was promulgated "in order to protect interstate commerce, the national credit, the federal taxing power, to protect and make more effective the national banking system and Federal Reserve System, and to insure the maintenance of fair and honest markets in such transactions."[38] Courts in various jurisdictions have explained the purpose of the Securities Exchange Act as follows: .

• *Supreme Court.* The Securities Exchange Act of 1934 is not intended to circumscribe the courts' power to grant appropriate remedies.[39] One of the principal purposes of the Securities Exchange Act is to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets.[40]

• *New York.* The purpose of the Securities Exchange Act is to regulate securities exchanges and the securities

---

35. *Fidelity Federal Savings,* 458 U.S. 141, 153 (1982).

36. *Florida Lime & Avocado Growers Inc. v. Paul,* 373 U.S. 132, 142-143 (1963).

37. *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941).

38. 15 U.S.C.S. §78b.

39. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 (1970).

40. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 47 L.Ed.2d 668, 96 S.Ct. 1375, CCH Fed. Secur. L. Rep. p. 95479 (1976), reh. den., 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976).

market.[41] The primary purpose of the Securities Exchange Act is to protect customers of stock exchanges; that is, public investors.[42]

• *District of Columbia.* The intent of the Securities Exchange Act is protection of investors, markets, and the public generally by means of full disclosure.[43]

• *California.* The Securities Exchange Act has the dual purpose of providing regulation of securities and over-the-counter markets and protecting investors from inequitable and unfair practices in such a market.[44]

In *Merrill Lynch v. Ware,* 414 U.S. 117, 118 (1973), the United States Supreme Court held that a California wage statute was not preempted by the Securities Exchange Act because it: (1) did not fall within the mandate of the Securities Exchange Act to protect investors and to ensure fair trade practices, (2) could not be categorized as part of a need for uniform national regulation, and (3) did not unduly interfere with federal regulation of the securities industry or unconstitutionally burden interstate commerce. Absent repealing or exclusivity provisions, state law conflicting with a stock exchange's self-regulation under the Securities Exchange Act of 1934 should

---

41. *Schoenbaum v. Firstbrook,* 405 F.2d 200, CCH Fed. Secur. L. Rep. p. 92218 (CA2 NY 1968), *rev'd on other grounds,* en banc 405 F.2d 215, CCH Fed. Secur. L. Rep. p. 92327, 12 F.R. Serv. 2d 1233 (CA2 NY 1968), *cert. den.,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969).

42. *Lank v. New York Stock Exchange,* 548 F.2d 61, CCH Fed. Secur. L. Rep. p. 95841 (CA2 NY 1977).

43. *Graphic Sciences Inc. v. International Mogul Mines Ltd.* 397 F. Supp. 112, CCH Fed. Secur. L. Rep. p. 94834 (D.C. Dist. Col. 1974).

44. *Crofoot v. Sperry Rand Corp.,* 408 F. Supp. 1154, CCH Fed. Secur. L. Rep. p. 95611 (ED Cal. 1976).

be preempted by the exchange's regulations *only to the extent necessary* to protect the achievement of the aims of the Securities Exchange Act. *Id.* at 119.

Here, defendant PSX contends that as a self-regulating organization pursuant to the laws of Congress and the SEC Act, it is required to conduct disciplinary proceedings when a member, or a person associated with a member, is suspected of violating federal securities laws or internal rules or regulations.[45] In addition, defendant PSX notes that the market surveillance program, as approved by the SEC, is responsible for handling any disciplinary issues within the exchange.[46] Therefore, based on these assertions, defendant PSX concludes that plaintiffs' state tort claims are preempted by federal law.

In this trial judge's opinion, while defendant PSX's citation of the law may be correct, its conclusions, as applied to the facts in this case, are erroneous. This trial judge notes that this is not a case of preempting disciplinary action against the traders involved in this altercation. The instant matter is one of assault and battery by a trader resulting from an alleged atmosphere of hostility and violence. In reviewing the Securities Exchange Act of 1934 and its amendments, it is evident that the purpose of the Act was to establish requirements for self-regulating organizations *in* the securities market. The Act seeks to regulate the stock exchanges and the relationships of the investing public to corporations which invite public investment by listing on such exchanges.[47] Contrary to

---

45. Defendant PSX's motion for post-trial relief, p. 6.
46. *Id.*
47. *Schoenbaum v. Firstbrook,* 405 F.2d 200, 206 (1968).

what defendant PSX contends, the rules and regulations for self-regulating organizations are designed to protect *investors,* and do not address tort claims in state court. The market surveillance program promulgated by the self-regulation organization solely focuses on trading activities, seeking to detect suspect transactions. See Act §2.03. Furthermore, chapter one of the Act describes at length the types of investigations regularly conducted by the commission, concerning issues such as sales of unregistered securities and misrepresentations made by buyers. State tort claims, such as those alleged in this case, are not addressed.

Plaintiffs' averments against defendant PSX (negligent supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence) clearly do not fall within the ambit of protecting investors in the securities market. These claims against defendant PSX center on the environment on its trading floor. Plaintiffs' claims do not interfere with federal regulation of the securities industry, nor do these burden interstate commerce. Consequently, this trial judge opines that there is no federal preemption to plaintiffs' tort action against defendant PSX.

### Jury Instructions

Defendant PSX next contends that an error of law and/ or abuse of discretion was committed when this trial judge failed to find that defendant PSX did not have a duty to protect against criminal acts of third parties or to provide a security program beyond any gratuitous security program defendant PSX voluntarily undertook. Specifically, defendant PSX avers that this trial judge erred and/or abused its discretion in providing conflicting

jury charges regarding the duty of care owed by the Philadelphia Stock Exchange, namely plaintiffs' proposed points 23, 24 and 25, "since they [sic] provided for a much higher standard of care than that imposed by Pennsylvania law on a possessor of land that is not held open to the public." This trial judge opines that these arguments are without merit.

Plaintiffs' proposed points 23, 24 and 25 read as follows:

"(23) The standard or level of care owed by an occupier of land to a person who entered the land depends on whether the person who entered was an invitee, a licensee or a trespasser. In this case you heard testimony that Mr. Dooner paid fees to the defendant, Philadelphia Stock Exchange, for the right to do business on their premises. That means that, for purposes of duty, Mr. Dooner is to be considered a business invitee. A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the occupier of the land.

"(24) An occupier of land is required to use reasonable care in the maintenance and use of the land, and to protect invitees from foreseeable harm. An occupier of land is also required to inspect the premises and to discover dangerous conditions. An occupier of land is liable to invitees for any harm that the occupier should have anticipated, regardless of whether the danger is known or obvious.

"(25) Negligence—Failure to prevent intentional harm to business invitees. Negligence or carelessness is the failure to use the ordinary care that a reasonable person would have used under the circumstances. Specifically,

the Philadelphia Stock Exchange has a duty to use reasonable care to find out if one of their traders is being harmed or is likely to be harmed by others on the premises [sic] must protect him or her. The failure to do so is negligence. You must, therefore, decide whether the defendant knew or should have known that there was a likelihood of assaultive behavior occurring on their premises and whether or not they took reasonable steps to protect the plaintiff against it. In making this decision, you may consider the nature of the defendant's business and the defendant's past experience. You may determine from the evidence whether the Philadelphia Stock Exchange knew or should have known from past experience that there was a likelihood of conduct from the part of third persons in general that was likely to endanger the safety of Mr. Dooner even though the Philadelphia Stock Exchange had no reason to expect it on the part of any particular individual. If you determine that the nature of the trading business, or past experience, was such that the Philadelphia Stock Exchange should reasonably have anticipated careless or criminal conduct on the part of third persons, either generally, or at any particular time, you may find that the Philadelphia Stock Exchange was under a duty to take precautions against that conduct and to provide a reasonably sufficient number of servants to afford a reasonably [sic] protection."

This trial judge specifically charged that defendant PSX's duty of care was:

"As I stated negligence, or carelessness is failure to use the ordinary care that a reasonably prudent person would use under the circumstances. Here specifically the defendant, Philadelphia Stock Exchange, has a duty to use reasonable care to find out if one of their traders is

being harmed or is likely to be harmed by others on the premises and must protect him or her. The failure to do so is negligence. You must decide whether the defendant, Philadelphia Stock Exchange, knew or should have known that there was a likelihood of assaultive behavior occurring on their premises and whether or not they took reasonable steps to protect the plaintiff against it. In making this decision, you may consider the nature of the defendant's business and the defendant's past experience. You must determine from the evidence whether the defendant, Philadelphia Stock Exchange, knew or should have known from past experience that there was a likelihood of conduct from the part of third persons in general, that there was likely to endanger the safety of plaintiff even though defendant, Philadelphia Stock Exchange, had no reason to expect it on the part of any particular individual. If you determine that nature of the trading business or past experiences was such that the defendant, Philadelphia Stock Exchange, should reasonably have anticipated careless or criminal conduct on the part of third persons, either generally or in particular, you may find the defendant, Philadelphia Stock Exchange, was under a duty to take precautions against that conduct and to provide a reasonable sufficient number of employees to afford a reasonable protection.[48]

"The standard of care or level of care owed by an occupier of land, such as the defendant, Philadelphia Stock Exchange, to a person, such as the plaintiff, who entered the land depends upon whether the person who entered was an invitee, a licensee or a trespasser. In this case, you heard that the plaintiff paid fees to defendant, Phila-

---

48. N.T. 3/2/06, 98:25, 99:2-25, 100:2-25.

delphia Stock Exchange, for the right to do business on their premises. That means that for the purpose of duty, the plaintiff is to be considered a business invitee, and a business invitee is a person who is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the occupier of the land, such as defendant Philadelphia Stock Exchange. The occupier of land—and these are just terms of art, so when I say the occupier of the land, I'm referring to the defendant, Philadelphia Stock Exchange. The occupier of the land is required to use reasonable care in the maintenance and use of the land and to protect invitees from foreseeable harm. An occupier of land is also required to inspect the premises and to discover dangerous conditions. An occupier of land is liable to the invitee for any harm that the occupier should have anticipated, regardless of whether the danger is known or obvious."[49]

At the conclusion of the jury instructions defendant PSX made no objection to the jury charges. It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial or at the time of jury instructions, and raise the issue in post-trial motions.[50] Granting or denying an untimely objection lies in the discretion of the trial court.[51] Requiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors.[52] Waiver is indispensable to the or-

49. *Id.* at 105:8-25, 106:1-15.

50. *Harman ex rel. v. Borah,* 562 Pa. 455, 471, 756 A.2d 1116, 1124 (2000), citing *Takes v. Metropolitan Edison Co.,* 548 Pa. 92, 98, 695 A.2d 397, 400 (1997).

51. *Id.*

52. *Id.,* citing *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 258, 322 A.2d 114, 116 (1974).

derly functioning of our judicial process; it is a means of promoting jurisprudential efficiency by avoiding appellate court determinations of issues which the appealing party has failed to preserve.[53] In this trial judge's opinion, by having failed to timely object to the jury instruction, defendant PSX waived this appellate issue.

Notwithstanding this waiver, the Restatement (Second) of Torts, section 343, provides that:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."[54]

An invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or had actual or constructive notice of such condition.[55] If the harmful transitory condition is traceable to the possessor or his agent's acts, a plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm.[56]

---

53. *Id.* at 471, 756 A.2d at 112, citing *Reilly v. SEPTA,* 507 Pa. 204, 214, 489 A.2d 1291, 1296 (1985).

54. Restatement (Second) of Torts, §343.

55. *Moultrey v. Great A & P Tea Co.,* 281 Pa. Super. 525, 535, 422 A.2d 593, 598 (1980).

56. *Porro v. Century III Associates,* 846 A.2d 1282, 1286 (Pa. Super. 2004), citing *Myers v. Penn Traffic Co.,* 414 Pa. Super. 181, 186, 606 A.2d 926, 929 (1992).

Here, the trial testimony from various witnesses described what they perceived to be a hostile, cramped environment, which festered tension and unhealthy competition. Under the circumstances, defendant PSX's argument is without merit.

### Expert Opinions

Defendant PSX next contends that this trial court erred in allowing the opinion testimony of Plaintiffs' experts regarding the duty of care owed by defendant PSX, (the opinion of Ira Somerson), the extent of his injuries, (Dr. Gene Salkind's opinion), and the amount of lost wages and/or lost earning capacity (Terry Leslie's opinion).

With regard to the duty of care argument, defendant PSX contends that this objection was preserved by its request for a *Frye* hearing regarding the methodology used by Somerson in reaching his expert opinion. This *Frye* motion was denied by this trial judge as an improperly and untimely filed motion.[57] Notwithstanding this trial judge's ruling, during the trial proceedings defendant PSX objected to Somerson's expert testimony based on the contention that he would be testifying to a standard of duty that did not exist under the law.[58] The objections were overruled. Somerson opined that defendant PSX responded to the likelihood of incidents of workplace violence and assaults occurring on the trading floor with an entirely inadequate security program that was significantly below the standard security practice or standard of care.[59] Somerson's opinions were based upon the

---

57. N.T. 2/27/06, 11:3-25, 12:1-4.

58. *Id.* at 101:5-15.

59. N.T. 2/28/06, 139:12-17.

standard in the industry and the quality of defendant PSX's security program. Clearly, the jury was free to accept or reject these opinions. This trial judge opines that these opinions were not of the nature that required *Frye* considerations. Therefore, in this trial judge's opinion, the motion was properly denied,[60] and this argument is without merit.

As to the testimony of Dr. Salkind regarding plaintiff-husband's medical inability to work as a stock trader, defendant PSX contends that his opinions should have been precluded because these were not set forth in the expert report, and caused unfair surprise. Dr. Salkind's testimony had been videotaped for trial. After reviewing the transcript of the videotaped testimony, this trial judge determined that defendant PSX did not object to the questions and responses regarding plaintiff-husband's ability to perform as an options trader during the expert's testimony[61] and, therefore, failed to preserve this issue for trial. Defendant PSX *acknowledged* that there were no objections made during Salkind's testimony.[62] This trial judge opines that there was no abuse of discretion exercised when overruling defendant PSX's objection to Dr. Salkind's testimony. Furthermore, the expert opinions were not a surprise to defendant PSX since there was a claim for lost wages.

As to the testimony of Mr. Leslie, plaintiffs' vocational expert, regarding the lost wages and/or lost earning capacity claims, defendant PSX contends that this trial court erred and/or abused its discretion in allowing his opinion, as it "was improperly speculative in nature

60. N.T. 2/27/06, 102:24.
61. N.T. 3/1/06, 91:9-13.
62. *Id.* at 92:14.

because he could not differentiate what portion of plaintiff-husband's lost earning capacity was attributable to his alleged neck injury and what portion of his lost earning capacity was attributable to his unrelated back condition." Additionally, defendant PSX contends this trial court erred and/or abused its discretion in failing to preclude Leslie's testimony because it was based upon the inadmissible testimony of Dr. Gene Salkind.

The general rule in the Commonwealth of Pennsylvania is that a plaintiff bears the burden of proof as to damages.[63] The determination of damages is a factual question to be decided by the fact-finder.[64] The fact-finder must assess the testimony by weighing the evidence and determining its credibility and by accepting or rejecting the estimates of the damages given by the witnesses.[65] Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages.[66] The fact-finder may make a just and reasonable estimate of the damage based on relevant data and, in such circumstances, may act on probable, inferential, as well as direct and positive proof.[67]

In this case, Mr. Leslie based his expert testimony on the medical documents and reports, including the report of Dr. Salkind and opinion of the permanent nature of the physical disabilities sustained by plaintiff-husband due to the assault, and on a personal vocational interview

---

63. *Judge Technical Services Inc. v. Clancy,* 813 A.2d 879, 885 (Pa. Super. 2002).

64. *Id.*

65. *Id.*

66. *Id.*

67. *Id.*

and assessment of plaintiff-husband. Thus, a proper foundation was laid for the vocational expert opinion. Further, plaintiff-husband testified that due to the assault he could no longer perform the duties demanded of him as a stock trader, testimony supported by Mr. Roth, plaintiff-husband's former supervisor. Based upon the evaluation of all of the evidence presented, the jury had the prerogative to accept or reject this opinion, and make an informed estimate of plaintiff-husband's lost earning capacity. Again, in this trial judge's opinion, no error was committed that warrants a granting of a new trial and/or judgment n.o.v.

### *Jury Verdict*

Lastly, defendant PSX contends that this trial court erred and/or abused its discretion "in failing to find that the jury's verdict was contrary to the law, that the jury's verdict was against the weight of the evidence, that the jury's verdict was excessive, and, consequently, in denying defendant PSX's oral motion in limine, motion for nonsuit, motion for directed verdict and motion for post-trial relief on that basis."

A jury award can be set aside only when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff.[68] Only where the jury's verdict is so contrary to the evidence as to "shock one's sense of justice" should a new trial be awarded.[69] If the verdict bears a reasonable

---

68. *Kiser v. Schulte,* 538 Pa. 219, 648 A.2d 1 (1994).
69. *Id.* at 225, 648 A.2d at 4.

resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's.[70] However, when the injustice of the verdict "stand(s) forth like a beacon," a court should not hesitate to find it inadequate and order a new trial.[71]

A trial court has the authority to order a remittitur of an excessive jury verdict.[72] However, the trial court should not interfere with functions of the jury and undertake to determine facts, which is exclusively the province of the jury. When it is apparent that the jury has returned a verdict excessive in amount and clearly beyond what the evidence warrants, the trial court should set aside or reduce the verdict.[73] Conversely, if the verdict is supported by evidence, it must be permitted to stand where there is nothing to suggest that the jury was in any way guided by partiality, prejudice, mistake or corruption.[74] Therefore, it is the duty of the court to enforce the jury's verdict unless the circumstances cry out for judicial interference.[75]

As to the jury's assessment of damages, at the time of the assault plaintiff-husband was 35 years old and earning an annual average salary of $95,304 plus additional benefits.[76] Projected over the remainder of his work-life expectancy of an additional 27.01 years, Mr. Leslie opined that plaintiff-husband's projected lost earnings

70. *Id.*

71. *Id.* at 226, 648 A.2d at 4, citing *Elza v. Chovan,* 396 Pa. 112, 118, 152 A.2d 238, 241 (1959).

72. *Daley v. John Wanamaker Inc.,* 317 Pa. Super. 348, 352, 464 A.2d 355, 357 (1983). (citation omitted)

73. *Id.*

74. *Id.*

75. *Id.*

76. N.T. 2/28/06, 186:9-21.

capacity was approximately $2,778,352 plus an additional $97,334 in fringe benefits.[77] Mr. Leslie further opined that assuming plaintiff-husband continues at a current level of employment, he will earn approximately $1,462,024 over his work-life as well as an additional $124,072 in fringe benefits. The calculated difference in his projected lost earnings capacity and earnings is approximately $1,725,590.

The jury also considered the loss of household services calculated to be approximately $93,653, and plaintiff-husband's noneconomic damages, such as his pain and suffering and loss of life's pleasures. It was the jury's duty to assess a value to the noneconomic damages if that was its decision. Based on these elements of damage, the record clearly supports the jury award of $1,800,000.

It is, therefore, this trial judge's opinion that the jury's verdict in this case is supported by the evidence of record and is not the product of sympathy, prejudice, partiality, mistake or corruption. This trial judge finds no reason either to remit the award, order a new trial, or grant a judgment n.o.v.

As a final observation to defendant PSX's argument that a directed verdict should have been issued against defendant DiDonato, no error was committed. While defendant DiDonato admitted to the assault, he did not accept full responsibility for the extent of the injuries suffered. It appears that the jury agreed with him.

---

77. *Id.* at 196:21-22, 189:21-25, 190:2.

## CONCLUSION

Based on the foregoing discussion, this trial judge is of the opinion that no error was committed during the trial and/or when denying defendant PSX's post-trial motion. This trial judge respectfully requests that this appeal be dismissed and the orders dated June 15, 2006, be affirmed.