**Belgravia Condominium Association v. 1811 Belgravia Associates**

404

*Amit Shah, Ronald L. Williams, Robert S. Tintner* and *Peter C. Buckley, Jr.*, for plaintiff.

*Annrew Fylypovych, Raymond A. Quaglia, Ira B. Silerstein, Anexandre N. Turner, Andrew J. Fuga, George Bochetto, David P. Heim, John A. O'Connell, Lisa B. Swaminathan, John B. Kearney, Carl G. Roberts, Jon C. Sirlin* and *Nicholas Deenis*, for defendants.

MCINERNEY, *J.*, May 14, 2014—This appeal opinion is submitted relative to this court's denial of defendant O'Donnell & Naccarato's (hereinafter "O&N") post trial motion on November 27, 2013. The Belgravia defendants[1] retained defendant O'Donnell & Naccarato (hereinafter "O&N"), a professional engineering firm, to inspect the Belgravia Building, a building being converted to a condominium, and report its finding pursuant to the Uniform Condominium Act, 68 Pa. C. S. §§ 3404, 3411.

The Uniform Condominium Act required the Belgravia defendants to retain an independent architect or engineer to report on the present condition of all structural components and fixed mechanical and electrical installations in the conversion building.[2] O&N was retained to inspect the Belgravia Building for "visible structural and mechanical defects and for other visible conditions that adversely affect the health or safety of residential occupants."[3] The condominium act defines "structural defects" as those defects in components constituting any unit or common element which reduce the stability of the structure below accepted standards or restrict normal intended use of all or

---

1. The Belgravia defendants refer to 1811 Belgravia Associates, LP, PMC/Belgravia Associates, LP, PMC Property Group, Ronald Caplan, Jerold J, Novick and Greg J. Webster.
2. 68 Pa. C. S. § 3404 (a)(1).
3. 68 Pa. C. S. § 3411.

part of the structure and which require repair, renovation, restoration or replacement. Nothing in this section shall be construed to make the declarant responsible for any items of maintenance relating to the units or common elements.[4]

O&N submitted its report to the Belgravia defendants. The original report was subsequently revised by O&N. The revised report minimized certain defects and eliminated others. The revised report was attached to the public offering statement and was relied upon by the unit owners when purchasing the individual units.

The Belgravia Condominium Association ("The association") instituted an action for professional negligence and breach of contract against defendant O&N for its failure to properly inspect the building and report its findings. The matter was tried before a jury wherein the parties presented the testimony of numerous witnesses including experts. During the trial, the association chose to precede against defendant O&N only on a theory of professional negligence. As such, the association, with the consent and agreement of O&N, did not present a claim against O&N for breach of contract to the jury.

After a two week trial, the jury entered its verdict and found that the Belgravia defendants breached the Pennsylvania Uniform Condominium Act ("UCA") and their fiduciary duty to the association. The jury awarded the association $3,800,000 in compensatory damages and $900,000 in punitive damages on the claims against the Belgravia defendants. The jury also found against defendant O&N and awarded the association $350,000 for O&N's professional negligence.

---

4. 68 Pa. C. S. § 3411.

On July 1, 2013, O&N filed a motion for post trial relief seeking judgment N.O.V. ("JNOV"). As additional relief, defendant O&N requested the court to mold or modify the verdict so as to reduce the verdict proportionately by 92% or to the cost of repairing said conditions to the cost that existed in 2006.

On August 26, 2013, defendant O&N filed its memoranda of law in support of its motion for post trial relief. On November 26, 2013, after oral argument, the court denied defendant O&N's motion for post trial relief. On December 12, 2013, defendant O&N filed a notice of appeal of this court's order dated November 26, 2013. On January 2, 2014, the association marked as settled, discontinued and ended all claims against the Belgravia defendants. On January 30, 2014, O&N filed another notice of appeal appealing this court's order dated January 2, 2014 marking all claims against the Belgravia defendants as settled, discontinued and ended. Defendant O&N notes in its latter filed notice of appeal that the January 2, 2014 order made the order of November 27, 2013 final and appealable. Since the notices of appeal pertain to the same order dated November 27, 2013, this opinion is submitted relative to both appeals.

## DISCUSSION

It is axiomatic that, "[t]here are two bases upon which a JNOV can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant."[5] While the opportunity to move for JNOV

---

5. *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1007 (1992) (citations omitted). *Rohm & Haas Co. v. Cont'l Cas. Co.*, 566 Pa. 464,

typically is preserved by the filing of a motion for a directed verdict, the right to seek JNOV likewise is preserved by filing a motion, objection, point for charge, request for findings of fact and conclusions of law, offer of proof or other appropriate method at trial.[6]

In reviewing a motion for JNOV, the court must consider the evidence in the light most favorable to the verdict winner, who must receive the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved m his favor. Finally, a judge's appraisement of evidence is not to be based on how she would have voted had she been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.[7] The entry of a JNOV is a drastic remedy and a court cannot lightly ignore the findings of a duly selected jury.[8]

A. O&N failed to Preserve any Request for JNOV

In the case *sub judice*, the association argues that O&N waived its right to move for JNOV when it failed to move for a directed verdict or object to the verdict at the close of trial. In order to preserve an issue for review, litigants must make timely and specific objections during trial and

471, 781 A.2d 1172, 1176 (2001).

6. *See* Pa.R.Civ.P. 227.1(b)(1); *Hayes v. Donohue Designer Kitchen, Inc.* 818 A.2d 1287, 1291 n. 4 (Pa.Super.2003) ("[C]ases indicate that in order to preserve the right to request a JNOV post-trial[,] a litigant must first request a binding charge to the jury or move for directed verdict at trial.").

7. *Rohm and Haas Co. v. Continental Casualty Co.*, 566 Pa. 464, 471-72, 781 A.2d 1172, 1176 (2001) (citations and quotation marks omitted).

8. *Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 907 (Pa. Super.2007) (citation omitted). *Donoughe v. Lincoln Elec. Co.* 936 A.2d 52, 61 (Pa. Super. Ct 2007)

raise the issue in post-trial motions.[9] Requiring a litigant to make a timely, specific objection during trial ensures that the trial court has a chance to correct alleged trial errors.[10] Pursuant to Pa. R. Civ. P. 227.1 post-trial relief may not be granted unless the grounds,

> If then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and ....

During oral argument on the post trial motion, O&N argued it preserved its right to ask for a directed verdict in a jury instruction which the court denied.[11] Post-trial relief may not be granted unless the grounds therefore, if available, were raised by an appropriate method at trial.[12] In the case at hand, defendant O&N's proposed jury instruction for directed verdict was not part of the record and therefore defendant O&N did not properly preserve the issue for review.

Defendant O&N did provide the court with a copy of their proposed jury instruction but did not read the instruction in the record nor filed the instruction in the office of the prothonotary before filing its motion for post trial relief as required by Pa. R. Civ. P. 226. Defendant O&N had an obligation to make sure the record herein contained those documents necessary to allow a complete and judicious assessment of the issues to be addressed on appeal. Since the proposed jury instruction requesting

---

9. *Takes v. Metropolitan Edison Co.*, 548 Pa. 92, 695 A.2d 397, 400 (1997).

10. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114, 116 (1974).

11. N.T. October 15, 2013 p. 20.

12. *See* Pa.R.C.P. 227.1(b)(1).

a directed verdict was not made a part of the record, defendant O&N's request for post trial relief based on a JNOV is waived.

B. The Association presented evidence that O&N breached the Professional Engineering Standard of Care and caused harm to the Association.

Assuming *arguendo* defendant O&N preserved its right to seek JNOV, this court's ruling denying its request should nonetheless be upheld. Defendant O&N argued that the association failed to prove it breached a standard of engineering care by failing to properly identify and document "visible structural defects" as defined in 68 Pa. C. S. § 3411 (a) and failed to prove such defects existed in the May-June 2006 time frame. This court does not agree.

The sole claim presented and tried against defendant O&N was the claim for professional negligence. As such, the question posed to the jury was whether defendant O&N breached the standard of care applicable to professional engineers. The jury was instructed as follows:

> The association claims that O&N was negligent and breached the standard of care when it prepared the independent engineering report pursuant to the Uniform Condominium Act....

> Your must decide whether O&N was negligent in failing to identify any visible, structural or mechanical defects or other physical conditions that adversely affect the health and safety of the association's members and/ or failing to identify the useful life of all structural components and major utility installations and the estimated replacement costs of each....

The association also claims that O&N breached the standard of care when it prepared the independent engineering report pursuant to the Uniform Condominium Act. If you find that O&N failed to meet the standard of care when preparing the statement pursuant to the Uniform Condominium Act, then you must find O&N was negligent. If you find that O&N met the standard of care when it prepared the statement pursuant to the Uniform Condominium Act, then you find that O&N was not negligent.[13]

A review of the record demonstrates that sufficient evidence existed for the jury to consider, weigh and find that defendant O&N breached its engineering duty of care when it inspected the Belgravia Building. The association offered the testimony of three experts, Mr. McCoy, a professional engineer, Mr. Nevel, a professional engineer, and Mr. Payne, a construction estimator. Specifically, McCoy testified that O&N failed to have a licensed engineer perform the assessment, write the report and conduct a sufficient visual assessment.[14] According to McCoy, had a licensed engineer visited the site or seen the photos, they would have seen the obvious red flags and investigated further. The obvious red flags were the cracks in the mortar joints of the building visible in photographs taken in 2006 which would have led it to discover distress in the facade[15], the corroded cast iron balconies on top of the terra cotta, the missing mortar joints and severe cracking in the mortar[16], and the rain water conductors that existed in 2006 and which caused severe water damage

13. N.T. June 18, 2013 p. 132, 334.
14. N.T. June 12, 2013 p.m., pp. 31- 32, 42-43.
15. N.T. June 12, 2013 p. 41-42.
16. N.T. June 12, 2103 p.m. pp. 31-32.

and corrosion to the building[17].

McCoy further testified that defendant O&N's conduct was below the standard of care when it deleted and altered portions of its draft report and removed the sub-consultants reports[18] as well as its failure to conduct an assessment pursuant to the Uniform Condominium Act by not reviewing public records of the building.[19] In addition to the foregoing, evidence was presented from the historical society that the Building had code violations in 2006.

The other engineering expert offered by the association, nevel, testified that O&N failed to meet the standard of care with respect to O&N's inspection of the electrical system, specifically as it pertains to the second electrical system.[20]

Defendant O&N argues a lack of evidence existed as to the critical question of whether there were any visible structural defects or unsafe conditions at the Belgravia Building in 2006. However, the association's expert testified that the conditions depicted in the 2006 photographs were again observed in 2011 with respect to the moving and deteriorated terra cotta, the moving and deteriorated facade, deteriorated balcony, deteriorated roof, deteriorated wrought iron, cracked masonry and cracked brick.[21]

The experts did present evidence that those conditions affected the health, safety and welfare of the residents.

---

17. *Id.* p. 33, 35.
18. *Id.* 63, 64.
19. *Id.* at 44-45.
20. N.T. June 13, 2013 p. 82, 83.
21. N.T. June 12, 2013 p. 47-76.

McCoy and Payne testified that the facade was unsafe and that the movement of the terra cotta and the balconies were unsafe and would be of concern for the public health, safety and welfare.[22]

In addition to the expert testimony, the fact witnesses testified that no professional engineer carried out the duties and responsibilities of defendant O&N. Although Mr. Beebee, a professional engineer employed by O&N, signed the report he testified that he never actually looked at the Belgravia Building. Instead, Ms. Duncheskie, an engineer in training for O&N, prepared and assembled the report.

The associations' experts also testified that the breach of the professional standard of care caused it to suffer harm. McCoy testified that O&N's deletions and alterations to the draft report caused the association significant damages as a result of unaccounted for expenses, including but not limited to $287,000 in elevator repairs, $41,448 for providing an inadequate accessible entrance, $20,000 to repair steel platform and stairs, and $15, 000 to repair corroded beams and cracked concrete in the basement.[23] He also testified the association would incur $222,808.30 to repair the roof and $65,600 to repair the structural defects in the building.[24, 25]

Based on the foregoing, the court found that substantial evidence existed in the record for the jury to determine that O&N breached its professional engineering standard

22. N.T. June 12, 2013 p. 13, 14.
23. N. T. June 12, 2013 p. m. 67, 70.
24. N.T. June 12, 2013 p.m. p. 27-28.
25. The evidence presented demonstrated that the association incurred damages in excess of the amount of the jury's compensation award and no basis exists to overturn the verdict.

of care to the association in inspecting and preparing the report pursuant to the Uniform Condominium Act. Accordingly, the court properly denied defendant O&N's motion for post trial relief on this issue.

C. The Economic Loss Doctrine does not bar claims for Professional Negligence.

Defendant O&N argues that the association's professional negligence claim is barred by the economic loss doctrine because the sole losses alleged by the association are economic. Under settled Pennsylvania case law, a client may bring both a contract action and a tort action against a professional based on allegations that he or she failed to provide the client with professional services consistent with those expected of the profession.[26] No Pennsylvania courts have applied any of the doctrines barring tort recovery in relationships arising out of a contract, such as the economic loss doctrine or the gist of the action doctrine, to claims involving a professional's failure to exercise the proper standard of care. Also, the economic loss doctrine does not apply to professional negligence actions where there is privity of contract.[27] Pennsylvania has long recognized that purely economic losses are recoverable in a variety of tort actions including the professional malpractice actions.[28] Based on the foregoing, the motion for post trial relief on this issue was

26. *See Gorski v. Smith*, 812 A.2d 683, 693-94 (Pa. Super. 2002) (both breach of contract and professional negligence actions may be raised against an attorney who failed to provide professional services consistent with those expected of the profession).

27. *Rapidigm, Inc. v. ATM Mgmt. Servs., LLC*, 63 Pa. D. & C.4th 234, 240-41 (Com. Pl. 2003), citing *e.g.*, *Kituskie v. Corbman*, 552 Pa. 275, 714 A.2d 1027 (1998); *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58 (1989); *Liberty Bank v. Ruder*, 402 Pa. Super. 561, 587 A.2d 761 (1991).

28. *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 483, 866 A.2d 270, 288 (2005).

properly denied.

D. An inherent inconsistency does not exist in the verdict.

Defendant O&N argues that an inherent inconsistency exists with the jury's verdict in that the Belgravia defendants were not found to have breached warranties under the Uniform Condominium Act. According to defendant O&N, there is a complete lack of logic in this verdict because if the Belgravia defendants were found not to have breached their warranties under the Act, then there is no way that O&N could be held responsible for failing to properly report on defects which did not exist. However, no such inconsistency exists.

The association presented sufficient evidence for the jury to find that defendant O&N breached the professional engineering standard of care. The professional engineering standard of care breached by defendant O&N is independent from any duty that the Belgravia defendants owed to the association. The Belgravia defendants' duty is statutory, while defendant O&N's duty is based on common law. As such since no inconsistency exists, the motion for post trial relief was properly denied.

E. The Association did not present a breach of contract claim to the jury.

Defendant O& N argued that there was no evidence presented warranting a contract recovery. Defendant O&N is correct that no evidence was presented regarding a claim for breach of contract. However, the association withdrew said claim at trial. As such no evidence was presented, no jury finding was made and therefore no limitation of damages should apply. Defendant O&N's motion for post

trial relief on this issue was properly denied.

## CONCLUSION

For the forgoing reasons, this court's order dated November 27, 2013 should be affirmed.